UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, | § § § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:25-CV-132-RWS |
| | § | |
| HALOMD, LLC, ALLA LAROQUE, and SCOTT LAROQUE, | § § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS HALOMD, LLC, ALLA LAROQUE, AND SCOTT LAROQUE'S JOINT MOTIONS TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) AND <u>RELATED REQUEST FOR JUDICIAL NOTICE OF PUBLIC DOCUMENTS</u>**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................ 1

RELEVANT BACKGROUND .......................................................................... 5

I.    Federal and Texas legislatures enacted the NSA and SB 1264 to protect patients and create IDR Processes to resolve billing disputes between providers and plans. ........... 5

II.   Providers successfully challenged federal agency rulemaking, including in this court. ........................................................................................................... 7

III.  The resulting Federal IDR Process requires IDRE eligibility determinations, binding decisions, and limited judicial review. .................................................. 8

IV.   HaloMD helps providers navigate the IDR Processes, which continue to evolve under the guidance of the agencies and oversight by Congress. ............................. 11

V.    Losing in the IDR Processes, BCBSTX files RICO and common law claims against HaloMD solely based on submissions during the IDR Processes. ................. 13

LEGAL STANDARD ...................................................................................... 14

ARGUMENT .................................................................................................. 15

I.    Because IDR decisions are not judicially reviewable, except in narrow situations not pleaded here, BCBSTX's claims should be dismissed under Rule 12(b)(1) or 12(b)(6). ...................................................................................................... 15

      A.    Because vacatur under FAA standards is the exclusive judicial remedy under the NSA, the Court must dismiss all of BCBSTX's non-vacatur, collateral claims. ................................................................................................. 15

      B.    Any BCBSTX claims based on any Texas IDR disputes must also be dismissed. ............................................................................................. 18

II.   The related doctrines of displacement and preemption also require dismissal. ............ 19

III.  BCBSTX's lack of Article III standing requires dismissal under Rule 12(b)(1). ........... 21

IV.   The *Noerr-Pennington* doctrine provides independent grounds for dismissing all claims against Defendants because it immunizes their alleged conduct. ...................... 24

V.    The judicial-proceedings privilege in Texas bars BCBSTX's state law tort claims. ......... 26

VI.   BCBSTX fails to plead fraud with the particularity required by Rule 9(b). ..................... 27

VII.  All claims against the individual defendants should be dismissed. ................................. 28

      A.    BCBSTX fails to state claims against the individuals under Rules 12(b)(6) and 9(b). .............................................................................................. 28

      B.    BCBSTX cannot pierce HaloMD's LLC veil. ........................................... 29

VIII. BCBSTX has failed to state each of its claims on additional grounds. .............................. 30

A.   BCBSTX fails to plead the required reliance to state its Fraud, Negligent Misrepresentation, and Fraudulent Inducement claims (Counts I to III). ............... 30

B.   BCBSTX fails to state its two federal RICO claims (Counts V, VI). ...................... 33

1.   IDR submissions and activities are not RICO wire fraud as a matter of law. ................................................................................................................. 33

2.   BCBSTX fails to allege RICO injury and causation. ........................................ 35

3.   BCBSTX fails to allege a RICO enterprise. ...................................................... 37

C.   BCBSTX fails to state a claim for Money Had and Received (Count IV). ............. 39

D.   BCBSTX fails to state a claim for Declaratory and Injunctive Relief (Count VII). ............................................................................................................................ 40

CONCLUSION ................................................................................................................. 41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alberto v. Diversified Grp., Inc.*,
 55 F.3d 201 (5th Cir. 1995) .................................................................................29

*Alexander v. Sandoval*,
 532 U.S. 275 (2001) ............................................................................................20

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
 No. CV-14-03053, 2016 WL 6821115 (C.D. Cal. July 29, 2016)..........................6

*In re Amberson*,
 54 F.4th 240 (5th Cir. 2022) ................................................................................20

*Anza v. Ideal Steel Supply Corp.*,
 547 U.S. 451 (2006)..............................................................................................36

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................................................29

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners*,
 L.P., 229 F.3d 1135 (2d Cir. 2000).......................................................................25

*BE & K Constr. Co. v. NLRB*,
 536 U.S. 516 (2002)..............................................................................................24

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
 343 F.3d 719 (5th Cir. 2003) ................................................................................27

*Best Buy Co. v. Barrera*,
 248 S.W.3d 160 (Tex. 2007).................................................................................40

*Bridge v. Phx. Bond & Indem. Co.*,
 553 U.S. 639 (2008)..............................................................................................36

*In re Burzynski*,
 989 F.2d 733 (5th Cir. 1993) ................................................................................38

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972)..............................................................................................24

*In re Cloud*,
 214 F.3d 1350, 2000 WL 634637 (5th Cir. 2000) (per curiam) ............................28

*Coleman v. Dretke*,
 409 F.3d 665 (5th Cir. 2005) ................................................................................14

*Crane v. City of Arlington*,
 50 F.4th 453 (5th Cir. 2022) ................................................................................14

*Credit Suisse Sec. (USA) LLC v. Billing*,
   551 U.S. 264 (2007) ...................................................................................................... 19

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ...................................................................................... 38

*Crowe v. Henry*,
   43 F.3d 198 (5th Cir. 1995) ........................................................................................ 38

*Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*,
   937 F.3d 533 (5th Cir. 2019) ...................................................................................... 21

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ...................................................................................................... 23

*Davis v. FEC*,
   554 U.S. 724 (2008) ...................................................................................................... 23

*Diamond Resorts Int'l, Inc. v. Aaronson*,
   No. 617CV1394ORL37DCI, 2018 WL 735627 (M.D. Fla. Jan. 26, 2018) ........................... 35

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ...................................................................................................... 24

*Earl v. Boeing Co.*,
   53 F.4th 897 (5th Cir. 2022) ...................................................................................... 23

*Encompass Office Sols., Inc. v. Humana Health Plan, Inc.*,
   No. 4:12-CV-11, 2012 WL 12895362 (E.D. Tex. Sept. 30, 2012) ................................. 40

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
   123 F.4th 309, 331 (5th Cir. 2024) (Davis, J., concurring), *cert. denied*, 145 S.
   Ct. 2845 (2025) ............................................................................................................. 21

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001) ................................................................................... 30, 32

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*,
   189 F. Supp. 2d 385 (E.D. Va. 2002) ...................................................................... 25

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998) ........................................................................................ 26

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ...................................................................................... 14

*Geier v. American Honda Motor Co.*,
   529 U.S. 861 (2000) ...................................................................................................... 20

*Gomez v. Guthy-Renker, LLC*,
   No. EDCV 14–01425 JGB, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ...................... 38

*Grant Thornton LLP v. Prospect High Income Fund*,
   314 S.W.3d 913 (Tex. 2010) ...................................................................................... 30

*GRCDallasHomes LLC v. Caldwell*,
    619 S.W.3d 301 (Tex. App.—Fort Worth 2021, pet. denied) ................................40

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
    140 F.4th 271 (5th Cir. 2025) ................................................................8, 18, 20

*Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*,
    140 F.4th 613 (5th Cir. 2025) ........................................................................16, 17

*Guardian Flight LLC v. Health Care Serv. Corp.*,
    735 F. Supp. 3d 742 (N.D. Tex. 2024) .................................................................8

*Guerra v. Castillo*,
    82 F.4th 278 (5th Cir. 2023) ..............................................................................14

*Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*,
    512 F.3d 742 (5th Cir. 2008) ................................................................15, 17, 18

*Haase v. Glazner*,
    62 S.W.3d 795 (Tex. 2001)................................................................................31

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008)..........................................................................................16

*HECI Expl. Co. v. Neel*,
    982 S.W.2d 881 (Tex. 1998)..............................................................................33

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992)..........................................................................................36

*Ibanez v. Chase Bank*,
    No. 7:13-CV-293, 2013 WL 12155023 (S.D. Tex. July 18, 2013) .......................40

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011)..............................................................................31

*James v. Brown*,
    637 S.W.2d 914 (Tex. 1982)..............................................................................26

*Jubelirer v. MasterCard Int'l, Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ..............................................................38

*Keith v. Stoelting, Inc.*,
    915 F.2d 996 (5th Cir. 1990) ............................................................................28

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)..........................................................................34, 35

*King v. U.S. Dep't of Veterans Affs.*,
    728 F.3d 410 (5th Cir. 2013) ............................................................................14

*Kitty Hawk Aircargo, Inc. v. Chao*,
    418 F.3d 453 (5th Cir. 2005) ............................................................................14

*L'Arte De La Mode, Inc. v. Neiman Marcus Grp.*,
   395 S.W.3d 291 (Tex. App.—Dallas 2013, no pet.) ................................................39

*Landry's, Inc. v. Animal Legal Def. Fund*,
   631 S.W.3d 40 (Tex. 2021) ................................................................................26

*LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   617 F. Supp. 3d 547 (E.D. Tex. 2022) ................................................................7

*Merry Homes, Inc. v. Luc Dao*,
   359 S.W.3d 881 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ..........................40

*Meyer v. Brown & Root Const. Co.*,
   661 F.2d 369 (5th Cir. 1981) ............................................................................41

*Morrell v. Alfortish*,
   No. CIV.A. 10-924, 2010 WL 4668429 (E.D. La. Nov. 9, 2010) .............................33

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) .......................................................................................24

*Patterson v. Mobil Oil Corp.*,
   335 F.3d 476 (5th Cir. 2003) ............................................................................37

*Petty v. Portofino Council of Co-Owners, Inc.*,
   702 F. Supp. 2d 721 (S.D. Tex. 2010) ................................................................31

*Price v. Pinnacle Brands, Inc.*,
   138 F.3d 602 (5th Cir. 1998) (per curiam) ..........................................................33

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ...................................................................................25, 26

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*,
   342 A.3d 402 (Del. Ch. 2025) .....................................................................29, 30

*Relevant Grp., LLC v. Nourmand*,
   116 F.4th 917 (9th Cir. 2024) ...........................................................................25

*Republic of Kaz. v. Stati*,
   380 F. Supp. 3d 55 (D.D.C. 2019) .....................................................................34

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................................38

*Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*,
   533 F.3d 258 (5th Cir. 2008) ............................................................................40

*Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*,
   319 F.3d 205 (5th Cir. 2003) ............................................................................36

*Seger v. Branda*,
   No. 01-21-00224-CV, 2022 WL 17981559 (Tex. App.—Houston [1st Dist.]
   Dec. 29, 2022, pet. denied) ..............................................................................33

*Severs v. Mira Vista Homeowners Ass'n, Inc.*,
  559 S.W.3d 684 (Tex. App.—Fort Worth 2018, pet. denied) ................................26

*Shell Oil Co. v. Writt*,
  464 S.W.3d 650 (Tex. 2015)................................................................................26

*Sherwin-Williams Co. v. Holmes County*,
  343 F.3d 383 (5th Cir. 2003) .............................................................................40

*Sivertson v. Citibank, N.A.*,
  390 F. Supp. 3d 769 (E.D. Tex. 2019)......................................................14, 15, 41

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ........................................................................34, 35

*Sterett Equip. Co., LLC v. PH Steel, Inc.*,
  No. 1:22-CV-476, 2024 WL 1179788 (E.D. Tex. Mar. 19, 2024) ........................27

*In re Sunpoint Sec., Inc.*,
  377 B.R. 513 (Bankr. E.D. Tex. 2007) ..............................................................31

*In re Taxable Mun. Bond Sec. Litig.*,
  51 F.3d 518 (5th Cir. 1995) ..............................................................................37

*Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*,
  955 F.3d 482 (5th Cir. 2020) ....................................................................15, 17, 20

*Tex. Brine Co., LLC v. Am. Arb. Ass'n, Inc.*,
  No. CV 18-6610, 2018 WL 5773064 (E.D. La. Nov. 2, 2018) ...........................15

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Sers.*,
  654 F. Supp. 3d 575 (E.D. Tex. 2023) ..............................................................7, 8

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
  110 F.4th 762 (5th Cir. 2024) ...........................................................................8

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
  138 F.4th 961 (5th Cir. 2025) ...........................................................................8

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
  587 F. Supp. 3d 528 (E.D. Tex. 2022)................................................................7

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
  No. 6:23-CV-59-JDK, 2023 WL 4977746 (E.D. Tex. Aug. 3, 2023) ....................8

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
  659 S.W.3d 424 (Tex. 2023)..........................................................................11, 18

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .............................................................................21

*Thomas v. Daneshgari*,
  997 F. Supp. 2d 754 (E.D. Mich. 2014)..............................................................27

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................................................................23

*United Mine Workers of Am. v. Pennington,*
    381 U.S. 657 (1965) ........................................................................................................24

*United States v. Am. Com. Lines, L.L.C.,*
    759 F.3d 420 (5th Cir. 2014) ..........................................................................................19

*United States v. Pendergraft,*
    297 F.3d 1198 (11th Cir. 2002) .......................................................................................34

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO,* 31 F.3d 800 (9th Cir. 1994) ...........................................................................24

*Vanbaulen v. Wells Fargo Fin. Tex., Inc.,*
    No. 4:19-CV-00606, 2020 WL 1817311, at *3 (E.D. Tex. Mar. 13, 2020),
    *report and recommendation adopted,* No. 4:19-CV-606, 2020 WL 1812671
    (E.D. Tex. Apr. 9, 2020) ...................................................................................................1

*Varela v. Gonzales,*
    773 F.3d 704 (5th Cir. 2014) ..........................................................................................36

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.,*
    858 F.2d 1075 (5th Cir. 1988) ........................................................................................24

*Vista Acquisitions, LLC v. W. Shore Walden LLC,*
    No. 1:22-CV-739-MLB, 2023 WL 2145515 (N.D. Ga. Feb. 21, 2023) ...........................25

*Whelan v. Winchester Prod. Co.,*
    319 F.3d 225 (5th Cir. 2003) ..........................................................................................38

*Williams v. WMX Techs., Inc.,*
    112 F.3d 175 (5th Cir. 1997) ..........................................................................................14

## Statutes and Other Authorities

18 U.S.C. § 1961(1) ..............................................................................................................33

18 U.S.C. § 1962(c) ...............................................................................................29, 33, 38

18 U.S.C. § 1964(c) ..............................................................................................................33

42 U.S.C. § 300gg-111(a)(1)(C)(ii), (b)(1)(A) .......................................................................6

42 U.S.C. § 300gg-111(a)(3)(I), (K) ....................................................................................21

42 U.S.C. § 300gg-111(c) ...............................................................................................19, 25

42 U.S.C. § 300gg-111(c)(2) ..................................................................................................7

42 U.S.C. § 300gg-111(c)(5)(E)(i) ...........................................................................15, 17, 39

Del. Code Ann. tit. 6, § 18-303(a) ........................................................................................29

Tex. Civ. Prac. & Rem. Code § 16.003(a)...................................................................33

Tex. Ins. Code § 1467.089(b) .......................................................................................11

45 C.F.R. § 149.510(c)(4)(i) ........................................................................................25

45 C.F.R. § 149.510. Third ...........................................................................................19

86 Fed. Reg. 36,872, 36,874 ...........................................................................................5

88 Fed. Reg. 75,744, 75,753 ....................................................................................10, 12

88 Fed. Reg. 75,744, 75,760 .........................................................................................12

86th Leg., R.S. (2019)...........................................................................................6, 7, 25

Defendants HaloMD, LLC ("HaloMD"), Alla LaRoque, and Scott LaRoque (collectively, "Defendants") move to dismiss Plaintiff Blue Cross Blue Shield of Texas's ("BCBSTX's") claims (ECF Nos. 2, 3 ("Compl.")) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendants also request the Court take judicial notice of the public agency documents cited herein and attached hereto as Exhibits 1 to 10. *See Vanbaulen v. Wells Fargo Fin. Tex., Inc.*, No. 4:19-CV-00606, 2020 WL 1817311, at *3 (E.D. Tex. Mar. 13, 2020) (granting judicial notice request made in motion to dismiss), *report and recommendation adopted*, No. 4:19-CV-606, 2020 WL 1812671 (E.D. Tex. Apr. 9, 2020).

## <u>INTRODUCTION</u>

BCBSTX's claims all arise from alleged acts by HaloMD that were undertaken as part of the federal Independent Dispute Resolution process ("Federal IDR Process") or its Texas analog ("Texas IDR Process"). As BCBSTX's Complaint facially admits: "Two factors are motivating providers," represented by companies like HaloMD, to pursue what BCBSTX now complains are "excessive volumes" of IDR Process claims: "(1) ***providers winning*** a disproportionate amount of these disputes, and (2) the unreasonably ***high rates that providers are receiving***" as a result of those frequent wins. Compl. ¶ 69 (emphasis added). In short, BCBSTX has ***lost***, and now wants to relitigate anew and *en masse*, "***over 42,000***" healthcare billing disputes involving HaloMD. Compl. ¶ 153 (emphasis added). Pursuant to federal and Texas legislation, certified Federal IDR Entities ("IDREs") and Texas IDR arbitrators already resolved each of those disputes in over 42,000 individual ***binding*** decisions. Those awards are not subject to collateral attack in court.

BCBSTX's claims are barred by a range of legal principles, including express statutory limits on judicial review, Article III standing, and the *Noerr-Pennington* doctrine. Allowing such claims to proceed under the guise of "RICO" and "fraud" would chill legitimate, legislatively

1

prescribed IDR initiations and invite full-bore re-litigation of thousands, if not millions, of binding IDR decisions, for which duly elected legislatures deliberately curtailed judicial review. BCBSTX's claims should be dismissed on multiple grounds.

Both the Federal and Texas IDR Processes reflect recent bipartisan legislation aimed at protecting American patients from surprise out-of-network ("OON") bills and establishing fair and comprehensive processes to adjudicate payment amounts to OON providers for their services. The Texas Legislature passed Texas Senate Bill 1264 ("SB 1264"), effective January 2020, establishing the Texas IDR Process. Congress enacted the No Surprises Act ("NSA"), effective January 2022, establishing the Federal IDR Process. Federal and state agencies administer and oversee their respective IDR Processes. Although covering different disputes between OON providers and health plans, both the federal and Texas statutes and their subsequent rules and guidance require multi-step procedures. The processes both then culminate in binding decisions by third-party, certified IDREs and arbitrators. Importantly, both processes remove patients from the disputes. The federal and Texas statutes also place express limits on judicial review of those binding IDRE and arbitrator decisions—limits assailed by this lawsuit.

HaloMD is one of many participants in the IDR Processes. It initiates IDR Processes against health plans or insurers, like BCBSTX, on behalf of OON providers, including those who provide emergency services to patients. All of BCBSTX's claims against the three Defendants, HaloMD and two associated individuals, rest on allegations about "Defendants' abuse of federal and state legislation" and HaloMD's submission of allegedly fraudulent, ineligible claims into the IDR Processes, ending in the IDREs and arbitrators issuing binding awards ***for the providers against BCBSTX***. *See* Compl. ¶¶ 1, 5, 13. Yet, under the relevant statutes and rules and as BCBSTX admits, both sides make submissions during the IDR Processes—as in a court case or arbitration—

and BCBSTX could and did dispute eligibility before the IDREs and arbitrators. Compl. ¶¶ 110, 123, 147. Moreover, health plans like BCBSTX have superior information about plan type and IDR eligibility to HaloMD and its provider-clients, who must initiate IDR Processes within tight timeframes. *See infra* at 8–13. Because of that, in the Federal IDR Process, HaloMD and other initiators attest to eligibility "to the best of [their] knowledge." Compl. ¶¶ 50, 108, 121, 173, 185. The IDREs and arbitrators then consider any submissions from both sides in determining eligibility before independently rendering payment awards. *See infra* at 8–11.

There is no fraud here. In fact, BCBSTX concedes that roughly ***82,000*** IDR awards involving HaloMD and BCBSTX have ***no*** eligibility errors. *See* Compl. ¶¶ 88, 153. BCBSTX's real beef is with the statutorily mandated IDR Processes and its losing streak in those processes. *See* Compl. ¶¶ 3 ("These IDR Processes have not worked as intended . . . .").

Of course, BCBSTX is not powerless or without recourse. It can lobby and petition the federal and Texas legislatures and agencies to fix the issues that it claims plague the IDR Processes and facilitate the alleged conduct. BCBSTX itself cites the need for "corrective action from ***policymakers***," of which this Court is not one. Compl. ¶ 72 (emphasis added). BCBSTX also alleges that the Texas Department of Insurance ("TDI") has already intervened with HaloMD, indicating that BCBSTX has itself been talking with TDI about HaloMD and the purported conduct underlying this suit. Compl. ¶ 211. BCBSTX can also file suit against the proper government agencies and actors if it believes that the IDR Processes violate the law or its rights. That is exactly what providers and provider organizations did in the Eastern District of Texas in challenging the federal agencies' IDR rulemaking. The providers won, with Fifth Circuit affirmance in one of the cases. *See infra* at 7–8. Finally, BCBSTX can exercise its rights under applicable regulations,

including objecting during the IDR processes (which the Complaint admits it regularly does) and reopening and correcting Federal IDR decisions even after they conclude. *See infra* at 8–11.

All to say, behemoth health plans like BCBSTX have means to address the alleged IDR "abuses." This case, however, is strikingly improper and untenable on multiple legal grounds.

<u>First</u>, this Court cannot review the over 42,000 IDR disputes underlying BCBSTX's claims because both the NSA and SB 1264 expressly provide for "binding" IDRE or arbitrator decisions that are not judicially reviewable except in exceedingly limited circumstances that are not, and cannot be, pleaded here. To challenge a Federal IDR award in court, BCBSTX must seek vacatur under the "extraordinarily narrow" federal arbitration standards. To challenge a Texas IDR award in court, BCBSTX must have filed suit within 45 days of the award. It has done neither for any of the more than 42,000 at-issue disputes.

<u>Second</u>, for similar reasons, the NSA displaces BCBSTX's federal RICO claims and preempts its state law claims because, as alleged, they conflict with the NSA's text and purpose.

<u>Third</u>, because the IDRE and arbitrator decisions are necessary but uncertain independent conditions for BCBSTX's alleged harm, BCBSTX cannot establish Article III traceability, nor can it establish injury-in-fact for claims involving IDR awards and fees BCBSTX did not pay.

<u>Fourth</u>, the federal *Noerr-Pennington* doctrine and the Texas judicial-proceedings privilege separately require dismissal of BCBSTX's claims for challenging petitioning and litigation-like activities that are immunized or protected pursuant to both the First Amendment and Texas law.

<u>Fifth</u>, although alleged "fraud" underpins all of its claims, BCBSTX has not satisfied Rule 9(b), instead painting the "over 42,000" IDR disputes at issue with sweepingly broad allegations.

<u>Sixth</u>, in addition to suing HaloMD, BCBSTX has also targeted two associated individuals, Alla and Scott LaRoque, as defendants. As alleged and at most, those individuals founded and own

HaloMD, a Delaware LLC, and are not alleged with any specificity to have personally engaged in any actionable conduct. Suing the individual owners in their personal capacity is not only legally improper and unsound but also indicative of motives untethered to any meritorious claims.

Lastly, BCBSTX has failed to state essential elements of all its individual claims, including reliance, causation, and injury, providing yet further grounds for dismissal.

The Court, therefore, has multiple, independent grounds on which to dismiss all BCBSTX's claims with prejudice. Just as important policy underlies the NSA and SB 1264, this suit also has broader implications. Allowing claims like those here to proceed would not only violate the statutes and many legal principles outlined here but would also serve a chilling blow to legitimate IDR submissions that are the lifeline of OON providers in Texas and around the country.

## **RELEVANT BACKGROUND**

**I.    Federal and Texas legislatures enacted the NSA and SB 1264 to protect patients and create IDR Processes to resolve billing disputes between providers and plans.**

The NSA, preceded by SB 1264 and other state laws, brought a sea change for healthcare patients, providers, and plans. Massive health insurers like BCBSTX have traditionally wielded significant power against providers, forcing them to either join the insurer's network and accept one-sided contractual rates and terms, or proceed OON. Previously, if a plan refused to pay some or all of an OON provider bill, that was in some instances the end of the plan's involvement. The providers then had to either go unpaid or underpaid, or seek payment from the patient, resulting in some instances in surprise bills to the patient, for example, when for emergency services or OON services at an in-network facility. *See* 86 Fed. Reg. 36,872, 36,874. Those "[s]urprise medical bills can have devastating economic impacts on families' checkbooks" but the alternative of providers

going unpaid or underpaid also posed devastating impacts to their ability to continue to serve patients.[1] Protracted OON billing disputes also bogged down court dockets.[2]

In response, state legislatures began enacting "state surprise billing laws."[3] In Texas, bipartisan efforts led to SB 1264, which took effect on January 1, 2020.[4]

Recognizing the limited reach and unclear impact of the state laws, Congress stepped in. It passed the NSA, effective January 1, 2022, to provide nationwide protection for patients and processes for providers and to fill the gaps left by state laws, including for private self-insured employee benefit plans and air ambulance services not subject to state laws.[5] Now, patients are generally only responsible for their cost-sharing amount, such as a copay or deductible, replacing patient involvement with insurer involvement and holding insurers accountable beyond their initial payment or denial of payment to OON providers. 42 U.S.C. § 300gg-111(a)(1)(C)(ii), (b)(1)(A).

As BCBSTX alleges, the NSA and SB 1264 were intended not only to protect patients and reduce healthcare costs but also "provide a fair process for determining reasonable out-of-network reimbursement to providers." Compl. ¶ 1. "Specifically, both the NSA and SB 1264 established mechanisms—called 'IDR Processes'—intended to efficiently resolve out-of-network disputes and decrease aggregate healthcare costs." Compl. ¶ 2. SB 1264 requires the Texas Commissioner

---

[1] Press Release, Congressman Greg Murphy, *Murphy Introduces Bipartisan, Bicameral Legislation to Improve Enforcement of No Surprises Act* (last visited Nov. 12, 2025), https://murphy.house.gov/media/press-releases/murphy-introduces-bipartisan-bicameral-legislation-improve-enforcement-no.

[2] *See, e.g., Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV-14-03053, 2016 WL 6821115, at *1 (C.D. Cal. July 29, 2016) (citing three related actions involving provider-plan billing disputes as "compris[ing] perhaps the most complex civil matter currently pending in the Central District of California").

[3] Ex. 1, Off. of the Assistant Sec'y for Plan. & Evaluation, U.S. Dep't of Health & Hum. Servs., *Evidence on Surprise Billing: Protecting Consumers with the No Surprises Act*, U.S. DEP'T HEALTH & HUM. SERVS. (Nov. 2021), https://aspe.hhs.gov/sites/default/files/documents/acfa063998d25b3b4eb82ae159163575/no-surprises-act-brief.pdf ("*Evidence on Surprise Billing*"); *see also* Compl. ¶2 at 2 n.1 (citing same source).

[4] Tex. S.B. 1264, 86th Leg., R.S. (2019); *see also* Alexander Haer, Note, *Senate Bill 1264: The Texan Template for the National Fight Against Balance Billing*, 99 TEX. L. REV. 813, 813 (2021) ("In Texas, Senate Bill 1264 (SB 1264) was passed in 2019 with a wide bipartisan majority.").

[5] Ex. 1, *Evidence on Surprise Billing*, at 4–5.

of Insurance and TDI to implement and administer the Texas IDR Process. Tex. S.B. 1264, 86th Leg., R.S. (2019). The NSA, in turn, places that authority in three agencies, the Departments of Health and Human Services, Labor, and the Treasury ("Departments"). 42 U.S.C. § 300gg-111(c)(2). The IDR Processes are central to this case.

## II.    Providers successfully challenged federal agency rulemaking, including in this court.

After Congress enacted the NSA, the Departments began their IDR rulemaking. Providers filed several suits, including in this district, challenging aspects of that rulemaking.

As one of the first among those suits, the Texas Medical Association ("TMA") and a Texas physician filed an Administrative Procedure Act ("APA") action against the Departments challenging an NSA interim rule. *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 536 (E.D. Tex. 2022). That interim rule required IDREs to select the party-proposed payment amount closest to the "qualifying payment amount" or "QPA" unless certain conditions existed. *Id.* at 535–36. As the court explained, "the QPA is typically the median rate the insurer would have paid for the service if provided by an in-network provider or facility," and because insurers have "ultimate say" on in-network rates, "insurers now hold ultimate power . . . to calculate the QPA." *Id.* at 535. As that court held, however, the NSA expressly requires IDREs to consider the QPA ***and*** five other factors, with no instruction to weigh any one factor more heavily than others. *Id.* at 541. The court vacated the interim rule, and a later similar rule, for creating an improper rebuttable presumption for the QPA. *Id.* at 549; *LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 617 F. Supp. 3d 547, 553, 563 (E.D. Tex. 2022).

In later consolidated cases, the TMA and providers filed another APA action challenging another NSA rule. *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Sers.*, 654 F. Supp. 3d 575, 585–86 (E.D. Tex. 2023). That rule required IDREs "to presume the credibility of the QPA while 'evaluat[ing]' the credibility of the non-QPA factors" without giving weight to them unless certain prerequisites exist. *Id.* at 585. The court again agreed with providers and vacated the rule because it conflicted with the NSA's "unambiguous statutory text" that all statutory factors be considered

7

without any presumptions. *Id.* at 590, 594–95. The Fifth Circuit affirmed, tracking in large part the district court's decision. *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 767 (5th Cir. 2024). Providers also succeeded in challenging other interim rules, including those increasing fees and limiting batching of related claims. *See Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, No. 6:23-CV-59-JDK, 2023 WL 4977746, at *1, *15 (E.D. Tex. Aug. 3, 2023).

In short, although relatively recent, the NSA and Federal IDR Process are not new subjects in the Fifth Circuit.[6] IDR participants have used APA actions as successful vehicles to challenge aspects of the Federal IDR Process. Those past cases also squarely rebut BCBSTX's repeated assertions of wrongdoing based on IDR awards that exceeded the QPAs. Compl. ¶¶ 3, 189, 191.

## III.    The resulting Federal IDR Process requires IDRE eligibility determinations, binding decisions, and limited judicial review.

Intended to efficiently resolve disputes, the resulting Federal IDR Process is deliberately streamlined. First, the OON provider must initiate and exhaust an open negotiation period, within certain timeframes, if it disagrees with a health plan's initial payment or notice of denial of payment.[7] The clock starts for the OON provider when the bill is transmitted and the health plan

---

[6] Several NSA-related suits have ongoing appellate proceedings. *See Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 138 F.4th 961, 963 (5th Cir. 2025) (*en banc* review of regulations regarding QPA calculations, IDR deadlines, and other issues). In a non-APA action, air ambulance providers sued insurer Health Care Service Corporation—BCBSTX's parent company (Compl. ¶14)—for failing to timely pay binding IDR awards. *Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 747 (N.D. Tex. 2024). After the district court dismissed the claims finding no private right to enforce IDR awards, the Fifth Circuit affirmed. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025) ("*Guardian Flight I*"). The providers filed a petition for certiorari in October 2025.

[7] Ex. 2, Federal Independent Dispute Resolution (IDR) Process Guidance for Certified IDR Entities, at 8 (Dec. 2023 Update to Mar. 2023 Guidance), https://www.cms.gov/files/document/federal-idr-guidance-idr-entities-march-2023.pdf ("CMS IDRE Guidance"); Ex. 3, Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties § 5.5, at 17 (Dec. 2023 Update to Mar. 2023 Guidance), https://www.cms.gov/files/document/federal-idr-guidance-disputing-parties-march-2023.pdf ("CMS Parties Guidance").

makes or denies initial payment. If open negotiations do not resolve the dispute, either party can initiate the Federal IDR Process, which proceeds as summarized below:[8]

**Step 1** — Within **4 business days** after the close of the open negotiation period: Either party can **initiate the Federal IDR Process** by submitting notice to the other parties and three Departments.

**Step 2** — Within **3-6 business days** after initiation: The non-initiating party can accept the IDRE proposed by the initiating party or the Departments will randomly **select an IDRE** if no agreement.

**Step 3** — Within **3 business days** of the IDRE being initially selected: The certified IDRE must attest to no conflicts of interest and "**determine whether the Federal IDR Process is applicable**, thereby finalizing the selection."

**Step 4** — Within **10 business days** after final selection of the IDRE: The parties must submit their offers and pay the IDRE and administrative fees.

**Step 5** — Within **30 business days** after final selection of the IDRE: The IDRE must determine the payment amount, selecting one of the offers submitted, and notify the parties and the Departments.

**Step 6** — Within **30 calendar days** after the IDRE's determination: The amount due must be paid.

In June 2025, before BCBSTX filed this suit, the Departments outlined an additional step parties can take to reopen and correct errors, including "jurisdictional" and "procedural" eligibility errors, made by an IDRE:[9]

**Step 7** — **As soon as possible** after the IDRE closes the dispute: Either party can **report an error** to the IDRE, who should first validate the error and, once validated, request to **reopen** a closed dispute.

---

[8] Ex. 2, CMS IDRE Guidance, at 8–9; Ex. 3, CMS Parties Guidance, at 8–9.

[9] Ex. 4, Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties, at 5–6 (June 2025), https://bit.ly/4owqN5H.

The Federal IDREs are fifteen organizations, who are third parties certified by all three Departments to make all Federal IDR determinations.[10] In Step 3 above, as one of their first duties preceding all payment determinations, "certified IDR entities are responsible for determining whether or not a dispute is eligible for the Federal IDR process" for disputes in states like Texas with their own IDR laws.[11] Indeed, the Departments report that IDREs "report spending 50 to 80 percent of their time working on eligibility determinations." 88 Fed. Reg. 75,744, 75,753. Non-initiating parties like BCBSTX also have their own eligibility obligations. They "**must**" also give their own notification if they dispute eligibility or applicability at the time of Step 2 above, which the IDRE **must** then review at Step 3 along with the initiating party's notice:[12]

---

**5.5    Instances When the Non-Initiating Party Believes the Federal IDR Process Does Not Apply**



If the non-initiating party believes that the Federal IDR Process is not applicable, the non-initiating party must notify the Departments by submitting the relevant information through the Federal IDR portal as part of the certified IDR entity selection process. This information must be provided not later than **1 business day** after the end of the 3-business-day period for certified IDR entity selection (the same date that the notice of selection or of failure to select a certified IDR entity must be submitted). This notification must include information regarding the Federal IDR Process' inapplicability.

The certified IDR entity must determine whether the Federal IDR Process is applicable. The certified IDR entity must review the information submitted in the **Notice of IDR Initiation** and the notification from the non-initiating party claiming the Federal IDR Process is inapplicable, if one has been submitted, to determine whether the Federal IDR Process applies. If the Federal IDR Process does not apply, the certified IDR entity must notify the Departments and the parties within 3 business days of making that determination. While the matter is under review by the certified IDR entity, the timelines of the Federal IDR Process continue to apply, so the parties should continue to meet deadlines to the extent possible, as described in Section 9. Further, the Departments will maintain oversight of the applicability of the Federal IDR Process through their audit authority.

---

[10] Ex. 5, List of Certified Independent Dispute Resolution Entities (last visited Nov. 12, 2025), https://www.cms.gov/nosurprises/help-resolve-payment-disputes/certified-idre-list.

[11] Ex. 2, CMS IDRE Guidance, at 18.

[12] Ex. 3, CMS Parties Guidance, at 17; *see also* Ex. 6, Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities (Aug. 2022), https://www.cms.gov/files/document/ta-certified-independent-dispute-resolution-entities-august-2022.pdf.

BCBSTX is no stranger to this eligibility process, admitting that it regularly notified IDREs of allegedly ineligible disputes. Compl. ¶ 110, 123, 147. The IDREs were then required to review those notices in determining eligibility. BCBSTX also acknowledges that the IDRE's "decision is then binding upon the parties, subject to limited judicial review, and the non-prevailing party is responsible for administrative and IDRE fees." *Id.* ¶ 38(g).

The Texas IDR Process is similar. It provides for a "mandatory binding arbitration process" that also "involves a baseball style arbitration," where the neutral arbitrator must choose one side's offer. *Id.* ¶ 56. The Texas IDR Process places strict time limitations on a party's ability to seek judicial review, requiring suit within 45 days after the arbitrator's decision. Tex. Ins. Code § 1467.089(b); *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc*., 659 S.W.3d 424, 435–36 (Tex. 2023).

## IV. HaloMD helps providers navigate the IDR Processes, which continue to evolve under the guidance of the agencies and oversight by Congress.

Unlike health plans like BCBSTX, healthcare providers are focused on delivering direct patient care and generally have less resources to push billing disputes forward and navigate the IDR Processes. But, given the realities of health insurance, submitting IDR disputes has become critical to OON providers' basic ability to obtain fair reimbursement for services provided. Recognizing this need, HaloMD serves its provider clients by submitting their disputes to the Federal and Texas IDR processes, as well as other state processes. An asymmetry of information, however, continues to exist between health plans and providers. This is particularly true regarding the issue of IDR eligibility, which relies in large part on health plan type and design.[13]

Yet, even regarding plan type and eligibility, the plans frequently get it wrong themselves. In 2024, non-initiating parties objected to IDR eligibility 44% of the time, but only 19% of disputes

---

[13] *See* Compl. ¶37; Ex. 7, U.S. Dep't of Health & Hum. Servs., U.S. Dep't of Lab. & U.S. Dep't of Treas., *Initial Report on the Independent Dispute Resolution (IDR) Process, April 15 – September 30, 2022*, at 10 (2022), https://tinyurl.com/y63523h6 ("Determining whether the Federal IDR process is applicable to an item or service that is the subject of a payment dispute in a [state that has a potentially applicable state law] is complex. . . . The health plan type is nearly always required to determine whether the payment dispute is subject to state law or the Federal IDR process.").

were determined to be ineligible—that is, the non-initiating parties, almost always the health plans, were found to be wrong on eligibility 57% of the time.[14]

Given that significant error rate, neither providers nor HaloMD can simply rely on the eligibility objections of health plans. Recognizing that and the "[g]aps in communication between plans and issuers and providers," the Departments proposed a new disclosure rule in 2023 that would require insurer plans to use promulgated codes to communicate information about claim eligibility to providers.[15] That and other IDR-related rules remain only proposals, however, prompting frustrated calls from members of Congress to finalize the rules and "implement the law in alignment with clear congressional intent."[16] Members of Congress, from both sides of the aisle, have also denounced what they view as the appalling failure of insurers to pay the amounts decided and owed in the Federal IDR Process—prompting them to introduce, in July 2025, the No Surprises Enforcement Act and its Senate companion.[17]

Suffice it to say, legislators and agencies actively implement and enforce the NSA and IDR Process. And that process remains for them, not for courts' adjudicating "tort" claims.

---

[14] Ex. 8, U.S. Dep't of Health & Hum. Servs., U.S. Dep't of Lab. & U.S. Dep't of Treas., *Supplemental Background on Federal Independent Dispute Resolution Public Use Files, July 1, 2024 – December 31, 2024* (2024) ("*Supplemental Background*"), https://tinyurl.com/mrxmh6tr; *see also* 88 Fed. Reg. 75,744, 75,753 ("From April 15, 2022 to July 1, 2023, non-initiating parties challenged the eligibility of 190,465 disputes for the Federal IDR process, and certified IDR entities found 59,604 disputes ineligible.").

As admitted in the Complaint, BCBSTX has regularly challenged the eligibility of HaloMD-submitted claims, only to have its eligibility objections rejected by the IDREs in favor of a determination that HaloMD's eligibility position was correct. Compl. ¶¶110, 123, 147.

[15] 88 Fed. Reg. 75,744, 75,760; Ex. 9, Centers for Medicare & Medicaid Services, *No Surprises Act Independent Dispute Resolution Process Proposed Rule Fact Sheet*, CMS (last visited Nov. 12, 2025), https://www.cms.gov/newsroom/fact-sheets/no-surprises-act-independent-dispute-resolution-process-proposed-rule-fact-sheet.

[16] Letter from Hon. Jason Smith, Chairman, U.S. House Comm. on Ways & Means, et al., to Hon. Robert F. Kennedy, Jr., Sec'y, U.S. Dep't of Health & Hum. Servs., et al. (Sept. 5, 2025), https://waysandmeans.house.gov/wp-content/uploads/2025/09/WM-NSA-Letter-2025-FINAL.pdf.

[17] *See* Press Release, Congressman Greg Murphy, Murphy Introduces Bipartisan, Bicameral Legislation to Improve Enforcement of No Surprises Act (last visited Nov. 12, 2025), https://murphy.house.gov/media/press-releases/murphy-introduces-bipartisan-bicameral-legislation-improve-enforcement-no ("Although this historic legislation became law, big insurance companies have not been held accountable for paying what they owe. . . . The idea that health insurers are breaking the law and unfairly punishing patients and providers is unbelievable").

**V.    Losing in the IDR Processes, BCBSTX files RICO and common law claims against HaloMD solely based on submissions during the IDR Processes.**

Despite the imbalance in resources between plans and providers, the IDREs and arbitrators have determined in most disputes that providers' offers are more reasonable. As BCBSTX reports from CMS data, "for the second half of 2024, approximately 85% of Federal IDRs were decided in favor of providers." Compl. ¶ 70. Providers are winning, and plans like BCBSTX are losing.

BCBSTX has at its disposal a number of means to try to remedy its losing streak, including reopening disputes to correct any alleged errors. *See supra* at 8–11. In fact, all of BCBSTX's claims, if true, could have been corrected as "jurisdictional" or "procedural" errors under that reopen-and-correct procedure. BCBSTX could also submit more reasonable initial payments, open negotiation offers, and offers to the IDREs and arbitrators.

Instead of relying on those proper avenues, BCBSTX has piled its resources into this case, filing RICO and common law fraud and other claims against HaloMD, and its President Alla LaRoque and her spouse Scott LaRoque. Stripped of its conclusory rhetoric, the case boils down to BCBSTX's complaint that "HaloMD has procured awards on over 42,000 ineligible claims from BCBSTX" based on alleged misrepresentations that the IDREs and arbitrators then considered alongside any submissions from BCBSTX in first finding eligibility and then rendering binding IDR decisions in those "over 42,000" disputes. Compl. ¶ 153. That is, if it proceeds, this case would require the Court to re-determine eligibility for those "over 42,000" binding decisions. Yet, BCBSTX identifies only *six* "representative examples" of allegedly ineligible awards procured by HaloMD that occurred between September 15, 2023, and November 10, 2024. *Id.* ¶ 100 *et seq.*

Although having the records to estimate the "over 42,000" IDR disputes beyond its six examples, BCBSTX does not provide any particularized allegations to support those claims. It also does not disclose how many of those disputes went through the Federal versus the Texas IDR Process, although its other allegations indicate they mostly proceeded through the Federal IDR Process. *See id.* ¶ 88 ("Since September of 2022, HaloMD has initiated nearly 112,000 Federal IDR disputes and 12,000 Texas IDR disputes as to BCBSTX."). Those allegations also concede

that roughly **82,000** awards involving HaloMD are **unobjectionable**. *See id.* ¶¶ 88, 153 (112,000 + 12,000 – 42,000 = 82,000). Finally, BCBSTX asserts no factual allegations as to any actual acts by the individuals, the LaRoques, in any alleged fraud, beyond their general roles as to HaloMD.

## LEGAL STANDARD

In assessing subject matter jurisdiction under Rule 12(b)(1), the Court can consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013). The party asserting jurisdiction "bears the burden of proof for a 12(b)(1) motion to dismiss." *Id.* (citation omitted).

Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022) (citation omitted). While they must accept factual allegations, courts cannot "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (citation omitted).

All claims sounding in fraud must also satisfy Rule 9(b). Under that rule, "the who, what, when, and where" of the alleged fraud "must be laid out *before* access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

At the motion-to-dismiss stage, courts have broad discretion to take judicial notice of information "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"—including "publicly-available documents" produced by an agency that are "matters of public record directly relevant to the issue at hand" and information "available on [an] agency's website." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citing Fed. R. Evid. 201(b)); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *see also Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking notice of state agency website content). Courts can also take judicial notice of an "adjudicative fact," including other court cases. *Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 780 (E.D. Tex. 2019).

Apart from judicial notice, courts can consider extrinsic evidence that a complaint directly or indirectly references and "is central to Plaintiff's claims," without converting a motion to dismiss into a summary judgment motion. *Id.*

## **ARGUMENT**

I.    **Because IDR decisions are not judicially reviewable, except in narrow situations not pleaded here, BCBSTX's claims should be dismissed under Rule 12(b)(1) or 12(b)(6).**

All of BCBSTX's claims should be dismissed because they seek to relitigate "binding" IDR decisions for which both the NSA and SB 1264 foreclose judicial review except in very narrow situations that BCBSTX has not pleaded, and cannot plead, here.

Courts in this circuit have dismissed claims on analogous grounds under both Rules 12(b)(6) or 12(c) and 12(b)(1). *See, e.g.*, *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020) (reviewing and affirming dismissal of collateral attack on arbitration award under Rule 12(c)); *Tex. Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, No. CV 18-6610, 2018 WL 5773064, at *1 (E.D. La. Nov. 2, 2018) (Rule 12(c) dismissal based on 12(b)(6) standards); *Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 750–51 (5th Cir. 2008) (Rule 12(b)(1) dismissal in case involving foreign arbitration). Either way, BCBSTX's claims as to Federal and Texas IDR disputes should be dismissed.

A.    **Because vacatur under FAA standards is the exclusive judicial remedy under the NSA, the Court must dismiss all of BCBSTX's non-vacatur, collateral claims.**

Because BCBSTX does not and could not now seek vacatur of each of the "over 42,000" IDR decisions, all of its claims are improper collateral attacks that must be dismissed.

In the NSA, Congress was unequivocal: determinations by certified IDREs (I) "***shall be binding*** upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the" IDRE and (II) "***shall not be subject to judicial review***, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act ("FAA"). 42 U.S.C. § 300gg-111(c)(5)(E)(i) (emphasis added). The NSA does not otherwise provide for any type of judicial review of any aspect of the IDR Processes.

The Fifth Circuit has, in turn, interpreted these two NSA provisions in unison. The first provision that IDRE determinations "shall be binding . . . in the absence of a fraudulent claim . . . creates **no private right of action** to challenge IDR awards." *Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, 140 F.4th 613, 620 (5th Cir. 2025) (*"Guardian Flight II"*) (emphasis added). Instead, a dissatisfied party like BCBSTX can seek the regulatory remedy of reopening and correcting an IDR decision. *Supra* at 8–11. Or, if it wants to go to court, it must seek "vacatur of the awards" under the second NSA provision but only pursuant to the grounds under FAA Section 10(a), "explicitly incorporated [by the NSA] for that purpose." *Id.* Obvious policy reasons exist for curtailing IDR judicial review as in the arbitration context—where "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (citation omitted).

None of this, the NSA's express language and binding Fifth Circuit precedent, apparently matters to BCBSTX. Through its claims, it seeks to initiate the "cumbersome and time-consuming judicial review process" in re-adjudicating the "over 42,000" individual IDR disputes it claims were wrongfully procured and decided. All of its claims should be dismissed.

First, BCBSTX does not bring a claim for the one exclusive judicial remedy—vacatur under FAA Section 10(a) —that is available under the NSA. That failure alone requires dismissal. Nor, as detailed below, could it do so upon amendment, requiring dismissal with prejudice.

Under FAA Section 10(a), judicial review is "extraordinarily narrow" and limited to four categories. *Guardian Flight II*, 140 F.4th at 621 n.4. Of those narrow grounds, "fraud" for vacatur purposes "requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence." *Id.* at 620–21 (citation omitted). BCBSTX alleges none of those acts. Nor does it plausibly allege that HaloMD's acts in each of the "over 42,000" IDR disputes constituted "intentional" misstatements or "undue means." Instead, other allegations (e.g., the 82,000 unobjectionable IDR disputes) and public records show that IDR eligibility is complex and can go both ways, parties make their submissions

16

under tight timelines and "to the best of [their] knowledge," and health plans themselves regularly misstate eligibility despite their superior information. *Id.* at 621–22; Compl. ¶¶ 50, 108, 121, 173, 185; *supra* at 8–13. BCBSTX also cannot plead the remaining FAA Section 10(a) vacatur grounds, which require arbitrator "corruption," misconduct, or exceeding their powers. 9 U.S.C. § 10(a). Moreover, the NSA and FAA Section 10(a) provide for vacatur of a singular "determination" and a singular "award"—not vacatur of thousands of determinations and awards in gross. *Id.*; 42 U.S.C. § 300gg-111(c)(5)(E)(i).

Second, because BCBSTX challenges the propriety of IDR awards but does not seek vacatur of any individual award, its "purportedly independent claims" are all "unauthorized" or "disguised collateral attacks" that must be dismissed. *Tex. Brine*, 955 F.3d at 487, 490. The Fifth Circuit's decisions in *Gulf Petro* and *Texas Brine* are instructive and controlling. In *Gulf Petro*, the plaintiff brought RICO and state law claims, alleging arbitrator bribes, conflicts of interest, and *ex parte* communications. 512 F.3d at 749. The plaintiff, like BCBSTX here, claimed damages for its arbitration costs and expenses and lost money it would have won in the arbitration, among other claims. *Id.* The plaintiff first argued no collateral attack because its bribery and other allegations did "not attempt to relitigate the facts and defenses that were raised in the prior arbitration." *Id.* The Fifth Circuit, however, defined a collateral attack more broadly, as one where the alleged harm is caused "by the impact of the acts complained of on the award," and not by the alleged wrongdoing on its own. *Id.* The Fifth Circuit then dismissed the claims there because, although "cloaked" as RICO and state law claims, the alleged harm did not result from the bribery and other acts alone but, rather, from the impact those acts had on the arbitration award. *Id.* at 750. The Fifth Circuit similarly dismissed collateral claims in *Texas Brine*, where the plaintiff alleged harm in the form of a "'tainted' arbitration" and "wasted money spent on the arbitration," as a result of undisclosed arbitrator conflicts of interest. 955 F.3d at 489.

BCBSTX's claims, also cloaked as RICO and state law claims, all plainly constitute improper collateral attacks that require dismissal under *Gulf Petro* and *Texas Brine*. Even more so than those cases and making its claims more obviously collateral attacks, BCBSTX does seek to

17

"relitigate the facts and defenses" regarding eligibility "that were raised in the prior" IDR disputes. *Gulf Petro*, 512 F.3d at 749. And mirroring those cases, BCBSTX's alleged harm stems from the impact HaloMD's alleged acts had on the final IDR awards. According to BCBSTX, "[t]he end result of HaloMD's fraudulent submissions of ineligible items and services and claims to the Federal and State IDR Processes is that BCBSTX and its plan sponsors have had well over $100 million *in awards and administrative fees levied against them* related to services and claims that were not eligible for the Federal and State IDR Processes." Compl. ¶ 99 (emphasis added).

The Fifth Circuit's well-established collateral attack doctrine, thus, requires dismissal of all of BCBSTX's claims. To hold otherwise would eviscerate both that doctrine and the NSA's streamlined IDR Process, "throwing open the floodgates of litigation" contrary to Congressional intent. *Guardian Flight I*, 140 F.4th at 277.

## B.    Any BCBSTX claims based on any Texas IDR disputes must also be dismissed.

BCBSTX has also not timely sought vacatur of any Texas IDR awards, and it is unclear from its complaint whether any such individual awards in fact form the basis of BCBSTX's claims.

Like its federal counterpart, the Texas IDR Process also produces "binding" arbitrator decisions. *Tex. Med. Res.*, 659 S.W.3d at 435. Although Texas law does not incorporate the FAA like the NSA does, it does place strict time limitations on judicial review. A dissatisfied party only "has 45 days to file a suit for judicial review" after the arbitrator's decision. *Id.* at 436. The Texas Supreme Court has observed that "if Chapter 1467" of the Texas Insurance Code, where SB 1264 is codified, "tells us anything about the 86th Legislature's intent, it is that determining the amount that an out-of-network provider should be paid by an insurer is a technical exercise to be performed by a subject-matter expert—not an issue to be decided by a jury of laymen." *Id.* at 436.

BCBSTX has not pleaded that it timely filed suit within 45 days of any Texas IDR arbitrator decision. The six "examples" it provided all involved alleged eligibility misrepresentations in the

Federal IDR Process, most recently in November 2024, more than 45 days before BCBSTX filed this suit. Compl. ¶ 100 *et seq.*[18] Any claims based on Texas IDR decisions should be dismissed.

## II.    The related doctrines of displacement and preemption also require dismissal.

The related doctrines of displacement and preemption also foreclose BCBSTX's attempt to recast IDR disputes as RICO violations and state law torts outside the NSA and FAA framework. *See United States v. Am. Com. Lines, L.L.C.*, 759 F.3d 420, 422 n.1 (5th Cir. 2014) ("'Preemption' and 'displacement' are often used interchangeably. . . . Technically, however, preemption refers to whether federal statutory law supersedes state law, while 'displacement' applies when, as here, a federal statute governs a question previously governed by federal common law.").

Because Congress in the NSA "articulate[d] the appropriate standards to be applied as a matter of federal law" for narrow judicial review of IDR disputes, the NSA displaces BCBSTX's federal RICO claims because they conflict with those standards. *Id.* (citation omitted). Federal displacement occurs when Congress creates a comprehensive regulatory scheme that excludes other federal remedies. *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 279 (2007). In *Credit Suisse*, the Supreme Court held that comprehensive federal securities regulation "impliedly precludes application of antitrust laws" despite no express preclusion language. *Id.* at 270. The Court identified four factors that determine when regulatory schemes displace other federal laws: "(1) an area of conduct squarely within the heartland of [the agency's] regulations; (2) clear and adequate [agency] authority to regulate; (3) active and ongoing agency regulation; and (4) a serious conflict between the . . . regimes." *Id.* at 285.

Each factor confirms displacement here. First, HaloMD's conduct in the IDR Process is at the heart of what the Departments regulate under the NSA. Second, Congress granted the Departments clear authority to regulate all aspects of IDR proceedings within their statutory authority. 42 U.S.C. § 300gg-111(c); 45 C.F.R. § 149.510. Third, the Departments actively

---

[18] Although BCBSTX alleged that two examples involved initiation of both the Federal and Texas IDR Processes for the same claim, it alleges that the misrepresentation occurred as to Federal IDR eligibility.

exercise this authority through ongoing rulemaking and multiple regulations, Technical Assistance guidance establishing reopen-and-correct procedures, online complaint portals, and CMS enforcement actions. *Supra* at 8–13. Fourth, RICO claims litigated full-bore in federal court before juries would unquestionably and seriously conflict with the NSA's "binding" decisions and limited judicial review regime. Furthermore, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *Guardian Flight I*, 140 F.4th at 277 (explaining the "existence of [an] administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive." (citation omitted)). The Court should dismiss BCBSTX's RICO claims as displaced by the NSA.

BCBSTX's state law claims fare no better under the related preemption doctrine. Federal law preempts state laws when the state law claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000) (citation omitted). For example, with respect to the FAA, the Fifth Circuit has held that, "[u]nder the Supremacy Clause, if the FAA applies, it preempts any inconsistent provision of" its state law counterpart, the Texas General Arbitration Act. *In re Amberson*, 54 F.4th 240, 248 (5th Cir. 2022).

Here, the NSA's express incorporation of FAA Section 10(a) brings with it the FAA's preemptive force. Because vacatur under FAA Section 10(a) provides "the exclusive remedy" under the NSA "for the alleged wrongdoing," BCBSTX's state law claims stand as an obstacle to the full objectives of those NSA provisions and are inconsistent with the NSA's strict judicial review limitations. *See Tex. Brine*, 955 F.3d at 488. Preemption makes sense here. The NSA creates a nationally uniform, limited-judicial-review standard for Federal IDR disputes. Allowing state law claims challenging those same disputes to proceed would destroy that uniformity and subject federally administered IDR Processes to fifty different state liability regimes, with state courts and juries second-guessing IDR determinations based on varying state law theories.

Whether displacement or preemption, the conclusion is the same: Congress created a comprehensive, exclusive regime for resolving Federal IDR disputes. BCBSTX cannot circumvent the NSA's strict limits on judicial review through RICO, fraud, or any other state law theories.

### III.    BCBSTX's lack of Article III standing requires dismissal under Rule 12(b)(1).

BCBSTX's case theory, that HaloMD purportedly caused third parties to issue IDR awards and fees against BCBSTX, cannot satisfy Article III's traceability requirement.

Article III demands that there be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 542 (5th Cir. 2019) (citation omitted). The Supreme Court has generally found "that an injury was not fairly traceable" when "the independent act of a third party was a necessary condition of the harm's occurrence, and it was uncertain whether the third party would take the required step." *Texas v. United States*, 809 F.3d 134, 160 (5th Cir. 2015); *see also Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 331 (5th Cir. 2024) (Davis, J., concurring) (quoting same), *cert. denied*, 145 S. Ct. 2845 (2025) (per curiam). BCBSTX's claims should be dismissed because, by law, the third-party IDREs' and arbitrators' fact determinations and rulings were necessary to produce BCBSTX's alleged harm (IDR awards and fees against BCBSTX), and it was not certain that those third parties would act to produce that alleged harm.

First, the certified third-party IDREs and arbitrators are unquestionably "a necessary condition of the harm's occurrence" (as well as the legislatures and agencies who enacted, implement, administer, and/or authorize fees and binding awards as part of the IDR Processes). *See supra* at 5–13; Compl. ¶¶ 38–42, 56–60. In particular, the NSA mandates that IDREs evaluate eligibility based on "complex" technical criteria including plan design, state law applicability, and coverage terms that require IDREs to "expend considerable time and resources" on independently deciding eligibility. 42 U.S.C. § 300gg-111(a)(3)(I), (K); Ex. 8, *Supplemental Background*, at 3.

The IDREs also "must review" any information submitted by the parties. Ex. 3, CMS Parties Guidance § 5.5, at 17. The IDREs' required review of party submissions and other information and application of complex statutory and regulatory criteria to determine eligibility are, therefore, all preconditions of BCBSTX's alleged injuries, negating any fairly traceable causal connection between HaloMD's one-party submissions and those alleged injuries.

Second, the two-sided adversarial nature of the IDR Processes with an independent arbiter in the middle also creates the uncertainty that counsels against Article III traceability. By way of example, in 2024, IDREs determined that 19% of disputes, which were necessarily attested to be eligible when initiated, were ineligible—reflecting the very uncertainty that negates traceability: sometimes the IDREs find ineligibility (no alleged harm to BCBSTX), while other times they find eligibility correctly (no alleged harm) or purportedly incorrectly (alleged harm). Ex. 8, *Supplemental Background*, at 3. The Court need look no further than BCBSTX's own allegations, which show that, while BCBSTX claims that HaloMD fraudulently procured over 42,000 allegedly erroneous IDRE or arbitrator awards, HaloMD procured and the IDREs/arbitrators issued nearly twice that, **82,000,** that BCBSTX alleges were neither fraudulent nor erroneous. *Supra* at 13–14.

BCBSTX's role in the IDR Processes also negates traceability. BCBSTX is required and has the opportunity to notify the Departments and the IDREs if it believes an IDR dispute is ineligible, and the IDREs are, in turn, required to consider that notice. *See supra* at 8–11. BCBSTX's own handful of examples show that BCBSTX knew about the alleged instances of ineligibility going into the IDR Processes and so expressly presented its position to the IDREs. *See, e.g.*, Compl. ¶¶ 110, 119, 122. Again, sometimes BCBSTX succeeded in convincing the IDREs and arbitrators, other times it did not, thereby "causing" the alleged injuries here.

Seeking to bridge the traceability gap, BCBSTX may argue that IDREs and arbitrators violated their required duties and did not independently decide eligibility, simply taking HaloMD's attestations as true or only engaging in a "cursory review" (Compl. ¶ 64) given the "staggering volume of disputes" (*id.* ¶ 71) submitted by HaloMD and given the "systemic issues with the IDR process" (*id.* ¶ 103). But those are not results fairly traceable to HaloMD. BCBSTX's true quarrel

is with each IDRE's and arbitrator's supposed dereliction of his or her obligations to decide eligibility and, more broadly, with the IDR Processes they operate within. Those legislatively mandated processes govern IDRE and arbitrator reviews and permit, indeed require, through their tight deadlines, providers to initiate the processes for any claim they may want to dispute, placing no limits on volumes submitted. BCBSTX's gripes are nothing more than grievances about the statutory and administrative schemes Congress and the Texas Legislature created—precisely the type of disagreements that lack Article III standing and belong before legislators, not the courts.

In sum, the independent and uncertain acts by third-party IDREs and arbitrators not before this Court render the alleged injuries not fairly traceable to the Defendants' alleged conduct. To hold otherwise would create traceability and causation in all adversarial settings between one party's submissions and the other party's losses, despite the clear presence of a court, arbitrator, or IDRE as the ultimate decision maker on facts before it. Because all of BCBSTX's claims rely on the same deficient theory of traceability, they should all be dismissed under Rule 12(b)(1).

As for BCBSTX's alleged injuries in this case—being subject to IDRE- and arbitrator-issued awards, fees, and associated overhead allegedly as a result of HaloMD's submissions in the IDR Processes (*see* Compl. ¶¶ 98–99)—BCBSTX's complaint and public documents, as well as public records, show that for a likely large portion of the "over 42,000" undisclosed IDR disputes, BCBSTX cannot demonstrate Article III injury-in-fact either.[19]

---

[19] For cases alleging economic injuries, to satisfy Article III, plaintiffs must "plausibly allege[] that they're [] worse off financially because [of] defendants' fraud." *Earl v. Boeing Co.*, 53 F.4th 897, 903 (5th Cir. 2022). They cannot allege that *someone else* is financially worse off. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff." (citation omitted)). Article III standing is also "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation omitted). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

BCBSTX alleges injuries to "BCBSTX and *its plan sponsors*." Compl. ¶¶12, 89, 99, 314 (emphasis added). Agency reports show that, for Federal IDR disputes involving BCBSTX, the vast majority—*e.g.*, 75% in the last quarter of 2024—involved "partially or fully self-insured private (employment-based) group health plan[s]." Ex. 10, Centers for Medicare & Medicaid Services, *Independent Dispute Resolution Reports*, Federal IDR Public Use Files for 2024 Q3 and Q4 (as of May 28, 2025), *available at*: https://www.cms.gov/nosurprises/policies-and-resources/reports; *see also* Compl. ¶70 at 22 n.11 (citing same source). As BCBSTX acknowledges, for "employer-sponsored self-funded health plans," it does not serve as the plan itself but, instead, provides "administrative services." Compl. ¶14. And, as BCBSTX has

IV.    **The *Noerr-Pennington* doctrine provides independent grounds for dismissing all claims against Defendants because it immunizes their alleged conduct.**

Because BCBSTX's claims target and seek to shut down Defendants' fundamental right to petition, initiate, and make submissions into the quasi-judicial IDR Processes, the Court must also dismiss all claims under the *Noerr-Pennington* doctrine.

Under that doctrine, parties are immune from suit and liability for acts taken in exercise of their First Amendment right to petition. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) (citing *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). That protected right to petition unequivocally includes litigation and administrative petitioning activity, or filings made to courts and administrative agencies and in quasi-judicial proceedings. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 530 (2002); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555–56 (2014); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988). The Supreme Court has made clear that "the right to petition extends to all departments of the Government," not just to courts. *Cal. Motor*, 404 U.S. at 510. Accordingly, courts have applied the doctrine to quasi-judicial proceedings, including arbitration proceedings in public or quasi-public forums. *See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 n.9 (9th Cir. 1994) (applying *Noerr-Pennington* to

---

informed its "ASO" or Administrative Services Only customers, BCBSTX invoices "charges" to them for all IDR "negotiation and arbitration processes" on or after September 1, 2022. BlueCross BlueShield of Texas, *ASO Group Billing and Fees for Provider Negotiation and Independent Dispute Resolution (IDR) Processes*, News from the Blues for Producers (Apr. 12, 2023), https://tinyurl.com/yj5e3ux9. On top of that, BCBSTX also charges those plan sponsors a $50-per-claim amount for provider-initiated open negotiations and then an additional $75-per-claim amount for any provider-initiated Federal IDR disputes. *Id.* In short, plan sponsors pay all fees and overhead in those arrangements. *Id.*

BCBSTX has also not alleged ***any*** actual out-of-pocket payment for ***any*** IDR awarded amounts, or even that it is imminent that BCBSTX will pay any such amounts. It instead carefully words its allegations to focus on the mere fact that such amounts have been decided, "obtained," "procure[d]," and "levied"—but not "paid." *See* Compl. ¶¶12, 97, 99. And it asks the Court to declare that "the IDR awards for such ineligible claims . . . are not binding" and to enjoin Defendants "from seeking to enforce" those IDR awards, further affirmatively suggesting its non-payment of those awards. *Id.* ¶341. Indeed, pending cases and Congressional reports confirm that deliberate non-payment of binding IDR awards, by health plans like BCBSTX, is a pervasive problem impacting both providers and patients. *See supra* at 8 n.7, 12 & n.17.

24

"eight arbitration actions" in addition to court suits); *Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 392–93 (E.D. Va. 2002) (same).

Although *Noerr-Pennington* originated in the antitrust context, courts have extended its reasoning and protection beyond antitrust claims to bar other claims, including specifically RICO and state law fraud claims, that likewise target protected petitioning. *See, e.g., Relevant Grp., LLC v. Nourmand*, 116 F.4th 917 (9th Cir. 2024) (applying the doctrine to RICO claims); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners*, L.P., 229 F.3d 1135 (2d Cir. 2000) (summary order) (holding that "Noerr Pennington immunity is applicable to . . . state-law claims such as fraud"); *Vista Acquisitions, LLC v. W. Shore Walden LLC*, No. 1:22-CV-739-MLB, 2023 WL 2145515, at *3 (N.D. Ga. Feb. 21, 2023) (dismissing RICO claims based on litigation conduct).

The Federal and Texas IDR Processes, central to this case and the alleged conduct, plainly qualify as quasi-judicial proceedings. They are established, implemented, and administered by government actors from the federal and Texas legislative and executive branches. 42 U.S.C. § 300gg-111(c); Tex. S.B. 1264, 86th Leg., R.S. (2019). The IDR Processes function like agency adjudications and arbitrations with established procedures, deadlines, and opportunities for both sides to be heard. They involve neutral, independent decision makers, who are certified by the agencies and who are empowered to make binding decisions with limited judicial review. *See* 45 C.F.R. § 149.510(c)(4)(i). In fact, the limitations on judicial review are a nod to their quasi-judicial nature, recognizing that the IDR Processes serve as alternatives to full judicial review.

All of BCBSTX's RICO and state law claims also unquestionably arise from and challenge petitioning conduct by Defendants in the quasi-judicial setting of the IDR Processes. *See* Compl. ¶ 13 ("BCBSTX now brings this action to bar HaloMD from continuing to submit ineligible claims into the federal and Texas IDR Processes and to recover its damages.").

BCBSTX cannot show otherwise, nor can it invoke the narrow "sham" exception to *Noerr-Pennington* immunity. That exception applies only when petitioning activity is "not genuinely aimed at procuring favorable government action." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) (citation omitted). "Sham" petitioning must be "objectively

baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. Not surprisingly, a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.* at 60 n.5. Thus, as alleged, HaloMD's success in obtaining the at-issue, favorable IDR decisions for providers definitively establishes that its petitioning cannot be a "sham" or objectively baseless.

The *Noerr-Pennington* doctrine, thus, applies as an additional independent ground to dismiss all of BCBSTX's claims.

## V.    The judicial-proceedings privilege in Texas bars BCBSTX's state law tort claims.

Like the federal *Noerr-Pennington* doctrine, the Texas "judicial-proceedings privilege" also requires dismissal of BCBSTX's state law tort claims for fraud, negligent misrepresentation, and fraudulent inducement.

The "judicial-proceedings privilege" originated in the libel context, barring suits over "communications [made] in the due course of a judicial proceeding . . . regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). Texas courts have now extended the privilege to "prohibit[] 'any tort litigation based on the content of the communication' at issue." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 48 (Tex. 2021) (citation omitted). They have "also extended [the privilege] to quasi-judicial proceedings." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654–55 (Tex. 2015).

As shown above, the Federal and Texas IDR Processes plainly qualify as quasi-judicial proceedings. *See supra* at 25. HaloMD's attestations and submissions to the IDREs and arbitrators, which underlie all of BCBSTX's claims, are also unquestionably statements made "in the due course of" those quasi-judicial proceedings. *Landry's*, 631 S.W.3d at 48 (citation omitted). Accordingly, the judicial-proceedings privilege requires dismissal of BCBSTX's tort claims (Counts I to III). *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("fraud claims sound[] in tort"); *Severs v. Mira Vista Homeowners*

*Ass'n, Inc.*, 559 S.W.3d 684, 702 (Tex. App.—Fort Worth 2018, pet. denied) ("[n]egligent misrepresentation is a tort").

## VI.    BCBSTX fails to plead fraud with the particularity required by Rule 9(b).

Because BCBSTX's claims all sound in fraud, it must also meet Rule 9(b)'s requirements. Its failure to do so requires dismissal of all claims.

BCBSTX must plead "[a]t a minimum, . . . the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted). For RICO mail and wire fraud claims in particular, courts "have further required specific allegations as to *which* defendant caused what to be mailed (or made which telephone calls), and when and how *each* mailing (or telephone call) furthered the fraudulent scheme." *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 763 (E.D. Mich. 2014) (emphasis added). Critically, Rule 9(b) also prohibits group pleading that lumps all defendants together. "[R]eferring to the defendants collectively, 'without distinguishing which entity or persons committed the various alleged fraudulent conduct,' is generally insufficient." *Sterett Equip. Co., LLC v. PH Steel, Inc.*, No. 1:22-CV-476, 2024 WL 1179788, at *15 (E.D. Tex. Mar. 19, 2024) (citation omitted). Dismissal is warranted if fraud claims "do[] not differentiate" between each defendant and "specify how each is connected to the alleged fraud." *Id.*

BCBSTX violates Rule 9(b) as to all Defendants and particularly as to the two individual defendants. Beyond the handful of "representative examples," which do not allege acts by the individual defendants, the Complaint identifies no dates and no concrete details or acts by any Defendant for the remainder of the "over 42,000" IDR disputes apparently at issue in this case. BCBSTX's Complaint is, instead, replete with shotgun allegations, referring to "Defendants" collectively without distinguishing between HaloMD and the individual defendants. For its "fraud" allegations, the lynchpins of its case, BCBSTX simply alleges that "Defendants" submitted ineligible claims, made fraudulent representations, and engaged in a scheme to defraud—but never

specifies which defendant did what. This objectively falls far short of Rule 9(b)'s requirement to allege "the time, place and contents of the alleged misrepresentation." *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990).

## VII.    All claims against the individual defendants should be dismissed.

The individual defendants, Alla and Scott LaRoque, do not belong in this lawsuit.

A plaintiff states a claim against an individual officer, director, or member only if: (A) the plaintiff adequately alleges that the individual personally and knowingly committed the actionable conduct or (B) the plaintiff "submit[s] facts sufficient to 'pierce the corporate veil.'" *See In re Cloud*, 214 F.3d 1350, 2000 WL 634637, at *3 (5th Cir. 2000) (per curiam).

As alleged, the LaRoques are the founders and part of the ownership structure of HaloMD, a Delaware limited liability company ("LLC"). *See* Compl. ¶¶ 15, 22, 81. BCBSTX fails to state any factual, non-conclusory allegations that either individual personally or knowingly committed any alleged act of fraud, nor are there any allegations to pierce HaloMD's LLC veil. As shown above, multiple grounds require dismissal of all claims outright. But, if any claims were to survive, the Court should dismiss the claims against the LaRoques in their personal capacity.

### A.    BCBSTX fails to state claims against the individuals under Rules 12(b)(6) and 9(b).

BCBSTX does not factually allege that either individual defendant knowingly made any alleged misrepresentations regarding eligibility or otherwise during the IDR Processes. BCBSTX alleges only that the individual defendants:

- Are "beneficial owners" of HaloMD (Compl. ¶¶ 16–17);

- "Helped to create" HaloMD (*id.* ¶¶ 279–280);

- "Participated in, aided, and furthered" the enterprise (*id.* ¶¶ 279–280);

- Engaged in "funding its creation and overseeing its operations" (*id.* ¶ 279);

- Were involved in "directing its strategies" regarding IDR Processes (*id.* ¶ 279);

- "Funnel[ed] HaloMD business through . . . connections" (*id.* ¶ 280).

These are precisely the type of "'naked assertion[s]' devoid of 'further factual enhancement'" that courts routinely reject under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As shown above, Rule 9(b) also requires dismissal of BCBSTX's vague, conclusory pleadings as to the individual defendants. *See supra* at 27–28.

Additional reasons support dismissal of the RICO claims against them as well. RICO liability under the pleaded Section 1962(c) requires that each defendant knowingly "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). BCBSTX has not alleged, with facts versus conclusions, that either individual knowingly conducted or participated in any predicate act of wire fraud. The Complaint ***does not*** claim they conducted or participated in: transmitting any wires; making any false representation in any communication; or directing any specific fraudulent transmission. BCBSTX's claims against the two individual defendants should therefore be dismissed pursuant to Rules 12(b)(6) and 9(b).

## B.    BCBSTX cannot pierce HaloMD's LLC veil.

With no factual allegations as to the individual defendants, BCBSTX cannot reach them through other means either. Because HaloMD is a Delaware LLC, BCBSTX must overcome the hurdles under Delaware law to pierce HaloMD's LLC veil, which BCBSTX has failed to do.

Substantive Delaware law governs all veil-piercing issues related to Delaware LLC HaloMD. *Alberto v. Diversified Grp., Inc*., 55 F.3d 201, 205 (5th Cir. 1995). Under Delaware law, LLC members and managers cannot be held personally liable for the acts of the LLC unless the LLC's veil is pierced. Del. Code Ann. tit. 6, § 18-303(a); *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416 (Del. Ch. 2025). "Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason." *Id*. The central inquiry is whether a defendant abused or manipulated "the corporate form." *Id.* at 417. Relevant factors include: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned

company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Id.*

BCBSTX's Complaint has no allegations that would satisfy this demanding standard, nor does it even touch upon any of the relevant factors. Rather, BCBSTX's own allegations undermine any veil-piercing theory. As alleged, HaloMD is an operational business entity that employs individuals, maintains records, submits thousands of IDR disputes, and receives payments—hardly a "sham" that exists "for no other purpose than as a vehicle for fraud." *Id.* And, even just with respect to BCBSTX, HaloMD initiated 82,000 unobjectionable IDR disputes, *see supra* at 13–14, undeniably demonstrating that it is not a sham.

All claims against the individual defendants should be dismissed.

## VIII.    BCBSTX has failed to state each of its claims on additional grounds.

In addition to the grounds shown above that require wholesale dismissal of BCBSTX's claims, BCBSTX has also failed to state each of its claims on other grounds.

### A.    BCBSTX fails to plead the required reliance to state its Fraud, Negligent Misrepresentation, and Fraudulent Inducement claims (Counts I to III).

Because BCBSTX alleges factually that it knew of instances of ineligibility and because BCBSTX's injury was not caused by any reliance of BCBSTX, BCBSTX has failed to plead the requisite reliance, an essential element of BCBSTX's state law tort claims for fraud, negligent misrepresentation, and fraudulent inducement.

Under Texas law, "fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). While a misrepresentation can be made through an intermediary, it must ultimately be relied upon by the plaintiff, to *its* injury, to be actionable. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577–78 (Tex. 2001). That is, a fraud plaintiff must prove that the defendant "intended to induce [the plaintiff] to act upon the representation; and [the plaintiff] actually and justifiably relied upon the representation and thereby suffered injury." *Id.* at

577; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (the party "act[ing] in reliance" must be "the party" that "thereby suffered injury"); *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 560 (Bankr. E.D. Tex. 2007) ("Because neither [plaintiff] actually relied on the alleged misrepresentations of [defendant], they cannot recover under a theory of negligent misrepresentation"); *Petty v. Portofino Council of Co-Owners, Inc.*, 702 F. Supp. 2d 721, 734 (S.D. Tex. 2010) (dismissing negligent misrepresentation claim where "Plaintiffs' allege[d] that 'other[s] relied on the misrepresentation causing harm to Plaintiff'"). Fraudulent inducement similarly requires that the plaintiff was "induced to enter into a contract" by the false representation. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Given these requirements, BCBSTX's alleged reliance theory is legally untenable.

To begin, BCBSTX alleges in various of its few representative examples that it sent letters to HaloMD "explaining that these services were ineligible for the Federal IDR Process" and that it otherwise knew about the alleged ineligibility. Compl. ¶ 95, 102, 104, 131, 171, 181. BCBSTX also alleges that it affirmatively informed the IDREs of the claimed ineligibility. Compl. ¶ 110, 123, 147. These allegations facially preclude reliance by BCBSTX. In those instances, BCBSTX could not plausibly have ***relied*** on representations that it already believed and asserted to be false.

Instead, in nearly identical recitations, BCBSTX parrots the claim that it "ha[d] to reasonably and justifiably rely upon HaloMD's submission of information and attestations" on eligibility in other, undisclosed and unspecified instances given HaloMD's "delay and dump" tactics of initiating large volumes of IDR disputes at one time. Compl. ¶¶ 227, 251, 263. BCBSTX does not particularize the who, what, when, and how of any of those instances to satisfy Rule 9(b). And, looking at its theory through a Rule 12(b)(6) plausibility lens, BCBSTX did not "ha[ve] to rely." As an initial matter, HaloMD's IDR attestations were made "to the best of [its] knowledge" to the governing agencies and the IDREs/arbitrators, not to BCBSTX. Although agency guidance requires that after IDR initiation BCBSTX "must" object if eligibility issues exist, BCBSTX purportedly did not contest eligibility in each undisclosed instance because it found it difficult to do so, despite ***knowing*** in other documented instances that HaloMD allegedly initiated ineligible

disputes. *Supra* at 8–11. BCBSTX simply chose not to engage in that review, while it did so in other instances. Nor are HaloMD's alleged "delay and dump" tactics fraudulent or illegal where they involve no representations and the IDR Processes do not limit volumes of initiations. In reality, based on IDR timelines, when a provider initiates an IDR dispute is purely a function of when a health plan like BCBSTX makes an initial payment or denies payment. *See id*.

Even assuming BCBSTX's theory of self-reliance, it does not meet the essential element that BCBSTX "thereby suffered injury." *Ernst & Young*, 51 S.W.3d at 577. Just as this case should be dismissed on Article III traceability grounds, the independent agencies and IDREs/arbitrators likewise break any causal connection between any purported reliance and alleged injuries of BCBSTX's having to pay IDR fees and awards. *Supra* at 21–24. BCBSTX cannot get around this by alleging, again vaguely with no specificity, that the "federal government," the TDI, arbitrators, and the IDREs, all relied on HaloMD's submissions and attestations. Compl. ¶¶ 228, 252, 264. Under Texas law, the party injured must be the party ***who relied***. *Supra* at 30–31. IDR law and regulations also negate that alleged reliance, where the IDREs are required to independently assess eligibility and if the parties make submissions, review their eligibility notices. *Supra* at 8–11. BCBSTX has not factually alleged that, in the "over 42,000" supposedly erroneous IDR decisions, in each instance the IDRE actually and solely relied on HaloMD's submissions. It is just as plausible, given its mandated duties, that the IDREs also reviewed other information, including eligibility challenges, or the lack thereof, by BCBSTX, and independently reached their decisions. BCBSTX's fraud, negligent misrepresentation. and fraudulent inducement claims should be dismissed for failing to plead a particularized or plausible theory of reliance.

BCBSTX also cannot state a fraudulent inducement claim because it alleges no "contract" into which it was fraudulently induced. Conclusory allegations that it was "induced . . . to proceed through the Federal and Texas IDR Processes," statutorily mandated processes for OON billing disputes, and "to settle with HaloMD on certain ineligible claims" do not establish any contractual relationships, let alone ones caused by any fraud or actual, justifiable reliance. Compl. ¶¶ 265, 266.

Also, the two-year statute of limitations for BCBSTX's negligent misrepresentation claim has run on all claims that accrued before August 28, 2023. *Seger v. Branda*, No. 01-21-00224-CV, 2022 WL 17981559, at *5 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (noting two-year statute of limitations applies to claims for negligent misrepresentation).

### B.    BCBSTX fails to state its two federal RICO claims (Counts V, VI).

Based on the same theories underlying its state law tort claims, BCBSTX brings two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

To state a claim under the applicable RICO provision, BCBSTX must plead (1) the existence of an "enterprise" (2) that a "person" conducts (3) through a "pattern of racketeering activity." 18 U.S.C. § 1962(c); 18 U.S.C. § 1961(1). RICO also has statutory standing requirements, allowing civil claims by only those plaintiffs who were "injured in [their] business or property by reason of a violation." 18 U.S.C. § 1964(c). "Thus, a RICO plaintiff must satisfy two elements—injury and causation." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998) (per curiam). As courts in this circuit have recognized, "[b]ecause the civil RICO statute is an unusually potent weapon that entitles a prevailing plaintiff to treble damages, a RICO plaintiff must do more to defeat a motion to dismiss than simply to assert an inequity attributable to a defendant's conduct and tack on the self-serving conclusion that the conduct amounted to racketeering." *Morrell v. Alfortish*, No. CIV.A. 10-924, 2010 WL 4668429, at *3 (E.D. La. Nov. 9, 2010). That is what BCBSTX has done here—attempt to attribute the purported inequities of the IDR Processes to HaloMD and label HaloMD's IDR submissions as racketeering "wire fraud."

Because those submissions cannot constitute wire fraud, among other reasons, BCBSTX's RICO claims should be dismissed.

### 1.    IDR submissions and activities are not RICO wire fraud as a matter of law.

BCBSTX's RICO claims allege "wire fraud" as the required racketeering or predicate act. Those "wire fraud" allegations, in turn, rest entirely on HaloMD's participation, "submissions,"

and "attestations" in the IDR Processes. *See* Compl. ¶¶ 315–332. Because litigation and like activities cannot constitute wire fraud as a matter of law, BCBSTX cannot state its RICO claims.

In line with courts around the country, the Fifth Circuit has held that "[i]n the absence of corruption," litigation activity "cannot act as a predicate offense for a civil-RICO claim." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016). Courts have also concluded that even "fraudulent" or "perjurious" litigation activity does not constitute wire fraud. *See*, *e.g.*, *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (concluding that "allegations of frivolous, fraudulent or baseless litigation activities—without more—cannot constitute racketeering activity"); *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002) ("mailing of litigation documents, even perjurious ones, [does] not violate the mail-fraud statute").

The policy reasons are obvious, preventing RICO from becoming a treble-damages vehicle to relitigate resolved disputes into oblivion. *Kim*, 884 F.3d at 104. And, for the same reasons, courts have extended this law to arbitrations, recognizing that arbitration activities also cannot form the basis for mail or wire fraud. *See*, *e.g.*, *Republic of Kaz. v. Stati*, 380 F. Supp. 3d 55, 60–61 (D.D.C. 2019) (collecting cases and holding that filing a "Request for Arbitration" or "Petition to Confirm Arbitral Award" do not constitute "predicate acts of mail fraud and wire fraud").

Here, every alleged predicate act of wire fraud involves either submitting information and attestations to IDREs or arbitrators or collecting on IDR awards. Compl. ¶¶ 320–330. As alleged, these acts all constitute litigation-like activities in the quasi-judicial setting of the IDR Processes, which government agencies administer and culminate in binding decisions by certified neutral arbiters. *See supra* at 24–27; Compl. ¶¶ 320–330. BCBSTX's RICO "wire fraud" claims, thus, fall within the well-established law above that litigation and arbitration activities do not give rise to RICO liability. For the same legal and policy reasons, BCBSTX cannot use RICO to recast and

relitigate its "over 42,000" IDR losses as federal crimes (while choosing to leave alone the other 82,000 IDR disputes vis-à-vis HaloMD that it either won or has no objection to). Even accepting *arguendo* that an allegedly fraudulent filing "led to Plaintiffs engaging in subsequent arbitrations that might not have otherwise occurred . . . ***such conduct does not implicate the mail and wire fraud statutes***." *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 617CV1394ORL37DCI, 2018 WL 735627, at *5 (M.D. Fla. Jan. 26, 2018) (emphasis added). BCBSTX also does not and could not allege any "corruption," the only exception to the rule above. *Snow Ingredients*, 833 F.3d at 525.

To hold otherwise would allow losing parties to transform every initiation of and collection on an IDR dispute into a potential RICO claim upon the allegation of "fraud." Indeed, in 2024, non-initiating parties, almost always health plans like BCBSTX, were found to be wrong on eligibility 57% of the time. *See supra* at 11–12. Under BCBSTX's theory of RICO liability, any erroneous eligibility objections by health plans resulting in provider IDR losses should also give rise to RICO wire fraud claims against BCBSTX and other plans. IDR parties from both sides could then "relitigate [the] entire case in federal court" of thousands or millions of IDR disputes. *Kim*, 884 F.3d at 104. Congress and the Texas Legislature clearly did not intend that and expressly foreclosed that scenario by legislating IDR decisions to be "binding" with strict limitations on judicial review. *Supra* at 15–19. RICO law does the same. Just as an erroneous filing by BCBSTX in this litigation does not give rise to RICO liability, neither does any of the alleged predicate acts underlying this case. Both BCBSTX RICO claims should be dismissed with prejudice.

### 2.   BCBSTX fails to allege RICO injury and causation.

For the same reasons that BCBSTX has not pleaded Article III traceability for all claims or injury-in-fact for claims based on fees and awards it did not pay, BCBSTX has not pleaded RICO statutory standing or the required injury and causation. *Supra* at 21–24. If the Court does not dismiss on Article III grounds, it should on these grounds, which set a higher bar for RICO

plaintiffs. Additionally, the arguments above as to BCBSTX's failure to state reliance for its state law fraud and tort claims applies to its RICO claims too, providing yet additional grounds for their dismissal. *Supra* at 30–33.

First, as to causation, a RICO plaintiff must show that the defendant's alleged conduct was the but-for and proximate cause of the alleged injury. *Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). For RICO proximate causation, "the central question [a court] must ask is whether the alleged violation ***led directly*** to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). That "directness" requirement operates under the "general tendency of the law . . . not to go beyond the first step." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The Fifth Circuit has admonished that "conclusory assertions" that a plaintiff's RICO injury was the "direct result" of a defendant's conduct need ***not*** be accepted as true. *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014). Although RICO does not require first-party or "direct" reliance by the plaintiff, a theory of RICO fraud and injury "logically" requires that someone have relied on the alleged misrepresentation. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 658–59 (2008).

Here, even as alleged, BCBSTX's purported injury of incurring IDR fees and unfavorable decisions is not the "direct result" of HaloMD's IDR submissions and attestations. They instead resulted from third-party IDRE or arbitrator decision-making, where the certified IDREs and arbitrators receive both sides' submissions and independently review them and other information available to them before rendering the decisions that then, in some but not all instances, led to BCBSTX's IDR losses and alleged injuries. *See supra* at 8–14. Nor has BCBSTX sufficiently alleged third-party reliance by the IDREs or arbitrators, where BCBSTX's few factually alleged "representative examples" show that BCBSTX could and did object to ineligibility before the IDREs or arbitrators, who then could consider all information before them to reach their decisions. *See id*. Again, to hold otherwise would create RICO causation for all claims based upon litigation and like filings that one party believes are false, even when evaluated by a neutral intermediary

and even when the complaining party countered (or chose not to). BCBSTX's failure to allege the requisite causation requires dismissal of its RICO claims.

Second, to state the required injury to the plaintiff's "business or property" under RICO, the plaintiff must demonstrate a "conclusive financial loss." *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995); *see also Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003) (requiring a "concrete financial loss"). Such injury cannot be "speculative" or "the type of 'intangible property interest' that RICO does not protect." *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523. Based on BCBSTX's own allegations and public records subject to judicial notice, the "over 42,000" IDR disputes at issue in this case include disputes for which BCBSTX itself paid no fees or awards. *See supra* at 23–24 n.20. Because BCBSTX experienced no conclusive financial loss in those instances, those RICO claims should be dismissed.

### 3.    BCBSTX fails to allege a RICO enterprise.

BCBSTX's RICO claims also fail because it alleges no plausible RICO "enterprise." BCBSTX attempts to assert two alternate enterprises in a series of legal recitations: (i) "the HaloMD Enterprise" in Count V against the two individual defendants only, who allegedly comprise the two "persons" conducting and participating in the "enterprise's" affairs, and (ii) the "Out of Network Provider Enterprise" in Count VI against all Defendants, comprised of the Defendants and "the OON Providers who contracted with HaloMD." Compl. ¶¶ 277–85, 304–14. Neither alleged "enterprise" is cognizable under RICO.

As shown above, both RICO "enterprise" claims fail as to the two individual defendants because BCBSTX has not sufficiently alleged facts showing that either individual conducted or participated in either enterprise. *See supra* at 28–29. Without any "persons," the Count V RICO claim based on the "HaloMD Enterprise" should be dismissed.

The "Out of Network Provider Enterprise" also fails because, aside from its conclusory allegations, BCBSTX has not alleged anything beyond a routine contractual relationship between HaloMD and the unidentified "OON Providers." As one court has observed in surveying RICO

case law and ultimately dismissing the RICO claims there, "there has been a remarkable uniformity in [courts'] conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client" because, otherwise, RICO "liability [would] depend on counsel's artful pleading practices, rather than the actual circumstances giving rise to litigation." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14–01425 JGB, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (quoting *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999)). There are zero allegations that any "OON Providers" knowingly conducted or participated in the alleged wire fraud scheme. Instead, as alleged, the OON Providers entered routine contracts with HaloMD for a service—nothing more. *See* Compl. ¶ 308 ("The OON Providers are connected to HaloMD and Alla LaRoque by Scott LaRoque, and then contract to have HaloMD perform its marketed turn-key, AI-driven IDR revenue stream service, promising to maximize revenue for the OON Providers through the IDR Processes.").

Because BCBSTX has not sufficiently alleged that the OON Providers or the individual defendants participated in the alleged enterprise, all that is left is HaloMD, which cannot comprise the enterprise either. RICO liability under section 1962(c) applies only to a "person," or the defendant, who is "employed by or associated with any enterprise." 18 U.S.C. § 1962(c); *see also Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ("The RICO person in a civil or criminal RICO action is the defendant."). Because, by the statute's language, "a RICO person cannot employ or associate with himself," "the RICO person and the RICO enterprise must be distinct." *Crowe*, 43 F.3d at 205–06; *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993). In other words, the "*enterprise's* affairs" cannot be the same as the defendant's "*own* affairs." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (emphasis in original); *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (dismissing RICO claims where the alleged acts "were committed by agents and officers of [the defendant] in the ordinary course of business"). As alleged, both enterprises are nothing

more than HaloMD's own affairs. For this and other reasons, BCBSTX's RICO claims should be dismissed.

### C.     BCBSTX fails to state a claim for Money Had and Received (Count IV).

BCBSTX's claim for "money had and received" should be dismissed on multiple grounds. Under Texas law, a plaintiff bringing that claim "must show that a defendant holds money which in equity and good conscience belongs to the plaintiff." *L'Arte De La Mode, Inc. v. Neiman Marcus Grp.*, 395 S.W.3d 291, 296 (Tex. App.—Dallas 2013, no pet.).

First, BCBSTX has not alleged that the Defendants "hold" the fees BCBSTX claims as part of its injury. *See id.* BCBSTX claims it "incur[red] more than $30 million in administrative fees, and additional administrative and staffing expenses." Compl. ¶ 12. Defendants do not hold that money. The agencies collect any IDR fees, while the IDREs or arbitrators collect the other fees paid to them. BCBSTX also claims that HaloMD "wrongly obtained awards in excess of well over $100 million from BCBSTX and its plan sponsors." *Id.* BCBSTX alleges that HaloMD only receives "a portion of those awards as a contingency fee." *Id.* ¶ 295. But BCBSTX does not allege what the individual defendants received. BCBSTX also does not allege the amount (or even existence) of awards ***it has actually paid***, as compared to awards paid by third-party plan sponsors or awards it has refused to pay. Without that, there are no factual allegations that Defendants hold any award money.

Second, BCBSTX cannot show that any money "in equity and good conscience belongs to" BCBSTX. Fees are part of the IDR statutory and regulatory scheme, and they are charged by the agencies, IDREs, and arbitrators for their IDR services rendered. There is no "equity" argument for payback of fees by HaloMD. The awards, if in fact paid by BCBSTX to providers, also do not in equity belong to BCBSTX where a certified IDRE or arbitrator decided, in each dispute where both sides had the opportunity to make submissions, that the contested money legally ***did not belong to*** BCBSTX. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i). BCBSTX has also chosen to forego available avenues to legally recover that money, if justified. BCBSTX has not sought

administrative reopen-and-correction or judicial vacatur of any individual IDR awards. There is, thus, no inequity in retaining payments (if any) made on valid, unchallenged IDR awards.

Third, BCBSTX has a complete and adequate remedy at law, defeating this claim, which "is equitable in nature." *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007). "It has long been the law . . . that 'where an adequate and complete remedy at law is provided, [Texas] courts, though clothed with equitable jurisdiction, will not grant equitable relief.'" *GRCDallasHomes LLC v. Caldwell*, 619 S.W.3d 301, 308 (Tex. App.—Fort Worth 2021, pet. denied) (citation omitted).

Finally, the two-year statute of limitations for BCBSTX's claim for "money had and received" has run on any money purportedly paid before August 28, 2023. *See, e.g.*, *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 883–84 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

For all these reasons, the "money had and received" claim should be dismissed.

### D.    BCBSTX fails to state a claim for Declaratory and Injunctive Relief (Count VII).

In cursory terms, BCBSTX requests two forms of declaratory relief: (i) a declaration that Defendants unlawfully submitted false attestations and initiated IDR Processes for ineligible claims, and (ii) a declaration that the IDR awards "for such ineligible claims" are not binding. Compl. ¶ 341. BCBSTX also requests the Court enjoin Defendants from engaging in the conduct in (i) and from enforcing the awards in (ii). *Id.* The Court should dismiss all of these "relief."

First, just as BCBSTX's substantive claims should be dismissed for lack of Article III standing and failure to state a claim, so too should the declaratory and injunctive relief sought because they likewise require justiciability and plausibility and are not independent claims. *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003); *Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 264 (5th Cir. 2008); *Ibanez v. Chase Bank*, No. 7:13-CV-293, 2013 WL 12155023, at *3 (S.D. Tex. July 18, 2013).

Second, BCBSTX's requested relief should be dismissed as duplicative of other claims and impermissible. *See Encompass Office Sols., Inc. v. Humana Health Plan, Inc.*, No. 4:12-CV-11, 2012 WL 12895362, at *3–4 (E.D. Tex. Sept. 30, 2012) (dismissing duplicative declaratory relief

claim); *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted").

Third, BCBSTX's second request for declaratory relief—a declaration that the binding IDR awards are not binding—is a *de facto*, backdoor request to vacate each one of those many, undisclosed awards. As shown above, not only has BCBSTX not sought vacatur, it has met neither the requirements for vacatur of Federal IDR awards nor for timely judicial review for Texas IDR awards. *See supra* at 15–19. Like its substantive claims, BCBSTX's requested declaratory and injunctive relief should all be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of BCBSTX's claims with prejudice. The Court should also grant Defendants' request for judicial notice of the public agency documents, cited herein, listed in the attached index and declaration, and attached as Exhibits 1 to 10. The Court can also consider these extrinsic documents because BCBSTX's Complaint directly or indirectly references them, and they are central to the claims in this case. *See Sivertson*, 390 F. Supp. at 780.

Dated: November 18, 2025

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Michael A. Swartzendruber*
Michael A. Swartzendruber (Lead Counsel)
State Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
Shea R. Haass
State Bar No. 24055609
shea.haass@nortonrosefulbright.com
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Geraldine W. Young
State Bar No. 24084134
geraldine.young@nortonrosefulbright.com
1550 Lamar St., Suite 2000
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for Defendants HaloMD, LLC; Alla LaRoque; and Scott LaRoque*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, a true and correct copy of the above was served via email through the Eastern District of Texas's CM/ECF system.

*/s/ Michael A. Swartzendruber*
Michael A. Swartzendruber