# EXHIBIT 6

# Federal Independent Dispute Resolution (IDR) Process Guidance for Certified IDR Entities

August 2022

Provisions in this document related to the calculation of Qualifying Payment Amounts (QPAs) and disputes involving air ambulance services have not been amended to reflect the opinion and order in *Texas Medical Association, et al. v. U.S. Department of Health and Human Services, et al.,* Case No. 6:22-cv-450-JDK (*TMA III*). Information on provisions related to batched disputes also have not been amended to reflect the opinions and orders in *Texas Medical Association, et al. v. U.S. Department of Health and Human Services, et al.,* Case No. 6:23-cv-00059-JDK (*TMA IV*) and *TMA III*. Guidance issued by the Departments of the Treasury, Labor, Health and Human Services, and Office of Personnel Management on the calculation and use of QPAs, as well as their related exercise of enforcement discretion, can be found in "FAQs about Consolidated Appropriations Act Implementation, 2021 Part 62" (October 6, 2023) (available at: https://www.cms.gov/files/document/faqs-part-62.pdf).

The contents of this document do not have the force and effect of law and are not meant to bind the public in any way, unless specifically incorporated into a contract. This document is intended only to provide clarity to the public regarding existing requirements under the law.

This communication was printed, published, or produced and disseminated at U.S. taxpayer expense.





# Technical Assistance for Certified Independent Dispute Resolution Entities
## August 2022 Edition

## Topic: Batching and Bundling

1. **Can multiple qualified IDR items or services[1] be submitted together for separate payment determinations, (referred to as a 'batched dispute') as part of the Federal Independent Dispute Resolution (IDR) process?**

   Yes. The No Surprises Act and its implementing regulations allow for multiple qualified IDR items or services to be considered as part of a batched dispute when all of the following conditions are met:
   - the qualified IDR items or services are the same or similar items or services;
     - As defined in the interim final rules that appeared in the October 7, 2021, Federal Register, *Requirements Related to Surprise Billing; Part II*[2] (October 2021 interim final rules), to be the "same or similar", the qualifying IDR items or services must be billed under the same service code with modifiers, or billed under comparable codes with modifiers under different procedural code systems. A comparable code under a different procedural code system is a code that, along with any relevant modifiers, indicates an identical item or service;
     - the Department of the Treasury, Department of Labor, and Department of Health and Human Services (the Departments) have provided examples of different coding systems that could be used to describe a qualified IDR item or service; including the Current Procedural Terminology (CPT) Coding System, the Healthcare Common Procedure Coding System (HCPCS), and the Diagnosis-Related Group (DRG) Coding System;[3]
   - the qualified IDR items or services are billed by the same provider, group of providers, facility, or provider of air ambulance services, under the same National Provider Identifier (NPI) or Taxpayer Identification Number (TIN);

---

[1] As defined 26 CFR 54.9816–8T(a)(2)(xii), 29 CFR 2590.716-8(a)(2)(xii), and 45 CFR 149.510(a)(2)(xii), "qualified IDR items and services" include emergency services, certain non-emergency items and services furnished by nonparticipating providers at participating health care facilities, and air ambulance services furnished by nonparticipating providers of air ambulance services.

[2] Requirements Related to Surprise Billing; Part II, 86 FR 55980, 55994 (October 7, 2021), https://www.federalregister.gov/d/2021-21441.

[3] See 26 CFR 54.9816–8T(c)(3)(i)(C), 29 CFR 2590.716-8(c)(3)(i)(C), 45 CFR 149.510(c)(3)(i)(C).

**Technical Assistance for Certified IDR Entities (August 2022)**

- the payment (or notice of denial of payment) for the qualified IDR items or services is made by the same group health plan or health insurance issuer or Federal Employees Health Benefits (FEHB) carrier;[4] and
  - o **for fully-insured health plans**, this means that qualified IDR items or services can be batched if payment is made by the same issuer even if the qualified IDR items and services relate to claims from different fully-insured group or individual health plan coverage offered by the issuer;
  - o **for self-insured group health plans**, qualified IDR items or services can be batched only if payment is made by the same plan, even if the same third-party administrator (TPA) administers multiple self-insured plans;
- The qualified IDR items or services were furnished within the same 30-business-day period (or are items or services for which the open negotiation period expired during the same 90-calendar-day cooling off period[5]).

As the responses to questions 5 and 6 below indicate, incorrectly batched qualified IDR items or services may result in delays in the processing of disputes and require additional actions by the parties.

2. **What is the appropriate way to batch anesthesia services?**
   Plans and issuers generally calculate payment amounts for anesthesia services by multiplying the rate for the anesthesia conversion factor that has been negotiated between the payer and the provider or facility (expressed in dollars per unit) by (1) the base unit for the anesthesia service code, (2) the time unit, and (3) the physical status modifier unit. The base unit, time unit, and physical status modifier unit are specific to the individual receiving the anesthesia services. The base units are assigned to the services codes for anesthesia services, specifically CPT codes 00100 to 01999.

   Parties that initiate the Federal IDR process may submit a batched dispute involving anesthesia qualified IDR services that are billed using the same CPT code (for example, all claims with CPT code 01999), even if the qualified IDR services were billed using different time units and physical status modifier units as long as the qualified IDR items and services comply with the batching requirements set forth in 26 CFR 54.9816-8T(c)(3), 29 CFR 2590.716-8(c)(3), and 45 CFR 149.510(c)(3) as described in question 1 above.

---

[4] Throughout this document, for simplicity of drafting, group health plans, health insurance issuers and FEHB carriers are referred to as plans and issuers.

[5] As described in 26 CFR 54.9816–8T(c)(4)(vii)(B), 29 CFR 2590.716-8(c)(4)(vii)(B), 45 CFR 149.510(c)(4)(vii)(B), an initiating party may not submit a subsequent notice of IDR initiation involving the same non-initiating party with respect to a claim for the same or similar item or service that was subject of the initiation notification during the 90-calendar day period following the certified IDR entities payment determination on the initial claim.

**Technical Assistance for Certified IDR Entities (August 2022)**

Because qualifying payment amounts (QPAs) [6] for anesthesia services are calculated by multiplying the median contracted rate for the anesthesia conversion factor, indexed for inflation, by the sum of the base unit, time unit, and physical status modifier unit, batched anesthesia qualified IDR services are likely to have multiple QPAs.

3. **Are revenue codes considered service codes for the purpose of batched disputes?**
No, revenue codes are not considered service codes for the purpose of batched disputes. As stated in the preamble to the interim final rules that appeared in the July 13, 2021 Federal Register, *Requirements Related to Surprise Billing; Part I* (July 2021 interim final rules),[7] revenue codes are modifiers to service codes and indicate the department or place in the hospital where a procedure or treatment was performed. Qualified IDR items or services with different service codes (regardless of their revenue codes) may not be batched.

4. **Is there a limit to the number of qualified IDR items or services that can be batched?**
No, there is no limit to the number of qualified IDR items or services that can be included in a batched dispute, as long as the qualified items or services conform with the batching requirements set forth in 26 CFR 54.9816-8T(c)(3), 29 CFR 2590.716-8(c)(3), and 45 CFR 149.510(c)(3) as described in question 1 above.

5. **What should a certified IDR entity do if it receives a batched dispute that includes qualified IDR items or services that were not furnished within the same 30-business-day period (or did not have open negotiation periods expiring within the same 90-calendar-day cooling off period)?**

Qualified IDR items or services that were not furnished within the same 30-business-day period (or did not have open negotiation periods expiring within the same 90-calendar-day cooling off period) are not eligible to be considered as a batched dispute. When a certified IDR entity receives a batched dispute for which some of the qualified IDR items or services were not furnished within the same 30- business-day period (or did not have open negotiation periods expiring within the same 90-calendar-day cooling off period, if applicable), the certified IDR entity must inform both parties that the certified IDR entity will consider only the qualified IDR items or services that were furnished within the same 30-business-day period (or for which the open negotiation periods expired during the same 90-calendar-day cooling off period) in the batched dispute. The qualified IDR items or services that fall outside of the applicable period may be eligible for the Federal

---

[6] Generally, the QPA is the median of the contracted rates recognized by the group health plan or issuer on January 31, 2019, for the same or similar item or service that is provided by a provider in the same or similar specialty or facility of the same or similar facility type and provided in the same geographic region in which the item or service was furnished, increased by inflation. The plan or issuer calculates the QPA using the methodology established in the July 2021 interim final rules. 26 CFR 54.9816–6T(c), 29 CFR 2590.716–6(c), and 45 CFR 149.140(c).

[7] Requirements Related to Surprise Billing; Part I, 86 Fed. 36872, 36891 (July 13, 2021), https://www.federalregister.gov/documents/2021/07/13/2021-14379/requirements-related-to-surprise-billing-part-i.

**Technical Assistance for Certified IDR Entities (August 2022)**

IDR process individually or as part of a separate batched dispute if they meet all other applicable requirements, including the requirement for timely initiation of the Federal IDR process.

When determining which qualified IDR items or services were furnished within the same 30-business-day period (or for which the open negotiation period expired during the same 90-calendar-day cooling off period), the certified IDR entity should start the 30-business-day period (or the 90-calendar-day cooling off period) on the first business day upon which or immediately after the first qualified IDR item or service in the batch was furnished.[8] If the first qualified IDR item or service in the batch was furnished on a weekend or holiday, the 30-business-day period will begin on the next business day; in this case, the first qualified IDR item or service furnished on the weekend or holiday prior should be considered to be furnished within the same 30-business-day period as the claims submitted within 30 business days of the next business day. Any qualified IDR items or services furnished outside the applicable 30-business-day period (or with open negotiation periods that ended outside the same 90-calendar-day cooling off period) should not be considered as part of one batched dispute by a certified IDR entity.

The certified IDR entity should continue through the steps of the Federal IDR process for the qualified IDR items or services that fall within the applicable period. If the remaining qualified IDR items or services that were inappropriately batched meet all of the other applicable requirements, including the requirement for the timely filing of payment disputes, the certified IDR entity should direct the initiating party to resubmit the inappropriately batched services within four business days after the certified IDR entity notifies both parties of the inappropriately batched dispute. See question 8 below for more information on how incorrectly batched qualified IDR items and services should be re-submitted for payment determinations.

*Example 1*
On **Thursday, June 30**[9] a provider receives an initial payment for services furnished between **Saturday, April 30 and Wednesday, June 15**.[10] The open negotiation period for

---

[8] The Departments are of the view that it is appropriate to start the 30-business-day period with the date that the first qualified IDR item or service was furnished because items and services furnished after the first 30-business-day period will have more time to be timely re-submitted to the certified IDR entity.

[9] Sections 9816(a)(1)(C)(iv)(I) and 9817(a)(3)(A) of the Code, sections 716(a)(1)(C)(iv)(I) and 717(a)(3)(A) of ERISA, and sections 2799A-1(a)(1)(C)(iv)(I) and 2799A-2(a)(3)(A) of the PHS Act, as added by the No Surprises Act, require plans and issuers to send an initial payment or notice of denial of payment not later than 30 calendar days after a nonparticipating provider, facility, or provider of air ambulance services submits a bill related to the items and services that fall within the scope of the surprise billing protections for emergency services, non-emergency services performed by nonparticipating providers related to a visit to a participating facility, and air ambulance services furnished by nonparticipating providers of air ambulance services. The 30-calendar-day period begins on the date the plan or issuer receives the information necessary to decide a claim for payment for such services, commonly known as a "clean claim." In the examples in this section, the plan or issuer may be out of compliance with these requirements if a clean claim was timely submitted by the provider.

[10] The examples in question number 5 are based on the 2022 calendar year and account only for business days, excluding weekends and Federal holidays.

these services did not occur within an applicable 90-calendar-day cooling off period. The provider submits a notice of open negotiation for these services on the same day the initial payment is received (**June 30**). On **Thursday, August 18**, the provider initiates the Federal IDR process, which is within the required time period (on or before four business days after the end of the open negotiation period, which runs for the 30 business days after the date the provider submitted an open negotiation notice).

The certified IDR entity cannot consider this dispute as a single batch because the qualified IDR items and services were not furnished within the same 30-business-day period. Instead, subject to the provider fixing the improperly batched qualified IDR services according to the directions provided by the certified IDR entity (and as explained in the paragraph below), the certified IDR entity must treat this dispute as two separate batches: for example, one batch for the services furnished between **April 30** and **June 13** (30 business days) and another batch for the services furnished between **June 14** and **June 15**.

In this example, the certified IDR entity should direct the provider, as the initiating party, to resubmit the inappropriately batched qualified IDR services. The certified IDR entity should direct the initiating party to resubmit the qualified IDR services that were furnished between **June 14** and **June 15** (along with the appropriate certified IDR entity fee for a batched dispute and a separate administrative fee) within four business days after the certified IDR entity notifies the provider of the inappropriately batched services. The certified IDR entity can continue through the steps of the Federal IDR process for the qualified IDR services furnished between **April 30** and **June 13** (and retain the certified IDR entity fee and administrative fee for this particular batched dispute). If the initiating party does not resubmit the June 14-June 15 claims within 4 business days, as directed by the certified IDR entity, the initiating party will not be able to otherwise submit them to the Federal IDR process.

*Example 2*

On **Monday, May 30**, a provider receives initial payments for services that were furnished between **Saturday, April 30**, and **Sunday May 15**. On **June 30**, the provider receives initial payments for services furnished between **Monday, May 16** and **Wednesday, June 15**. On **Friday, July 15**, the provider submits a notice of open negotiation for all services that were furnished between **April 30** and **June 15**. On **Thursday, September 1** (which is on the fourth business days after the end of the 30-business-day open negotiation period which began on **July 15**) the provider initiates the Federal IDR process for all qualified IDR services that were furnished between **Saturday, April 30** and **Wednesday June 15**. The 90-calendar-day cooling off period does not apply to these services. The certified IDR entity <u>may not</u> accept the services that were furnished between **April 30** and **May 15** as a batched dispute because the date the provider initiated the open negotiation period (**July 15**) was more than 30 business days after the date the provider received the initial payment for these services (**May 30**). However, the certified IDR entity <u>may</u> accept as a batched dispute the qualified IDR

services that were furnished between **May 16** and **June 15** because the date the provider initiated the open negotiation period (**July 15**) was within 30 business days after the date the provider received initial payment for these services (**June 30**). Additionally, the date the provider initiated the Federal IDR process (**September 1**) was within four business days after the end of the 30-business-day open negotiation period (beginning on **July 15**).

Therefore, the certified IDR entity must not make a payment determination for any of the services that were included in the **May 30** initial payment (qualified IDR services furnished between **April 30** and **May 15**). Instead, the certified IDR entity must mark these services as ineligible in the Federal IDR portal. The certified IDR entity must continue with the Federal IDR process for the services furnished between **May 16** and **June 15**.

6. **What should a certified IDR entity do if it receives a batched dispute with respect to multiple qualified IDR items or services involving different self-insured group health plans?**

A batched dispute involving a self-insured group health plan may only include the one self-insured group health plan that is responsible for payment for all of the qualified IDR items or services in the batch. Qualified IDR items or services in a batched dispute that would be paid by different self-insured group health plans may not be batched as a single payment dispute. The certified IDR entity must mark as ineligible any qualified IDR items or services that would be paid by a different self-insured group health plan and must make payment determinations only for the qualified IDR items or services that would be paid by the plan that is subject to the dispute.

However, if the certified IDR entity finds that both the open negotiation notice and the IDR initiation notice were supplied in accordance with 26 CFR 54.9816-8T(b), 29 CFR 2590.716-8(b), and 45 CFR 149.510(b) to the self-insured plans that are represented in the inappropriately batched dispute, the certified IDR entity may allow the initiating party to resubmit the inappropriately batched dispute as correctly batched or single disputes for the separate plans. The certified IDR entity must inform the initiating party that any qualified IDR items or services that would be paid by different self-insured group health plans must be considered separately, provided the initiating party fixes the batching error in accordance with the technical direction provided by the certified IDR entity and that all applicable requirements related to the Federal IDR process are met.

In this case, the certified IDR entity should direct the initiating party to resubmit the inappropriately batched qualified IDR items or services within four business days after the certified IDR entity notifies all parties of the inappropriately batched dispute and the steps for re-submitting the remaining qualified IDR items or services (if they were otherwise eligible under the Federal IDR process timelines and rules) in accordance with the technical direction provided to certified IDR entities by the Departments. If the qualified IDR items or services are not resubmitted within four business days, they

**Technical Assistance for Certified IDR Entities (August 2022)**

cannot be considered. See question number 8 below for more information on how incorrectly batched qualified IDR items and services should be re-submitted for payment determinations.

*Example*[11]
A certified IDR entity receives a batched dispute from a provider (the initiating party), for which the TPA (the non-initiating party) who administers several self-insured group plans demonstrates that qualified IDR items or services would be paid by two self-insured group health plans. The certified IDR entity determines that the self-insured group health plans are administered by the same TPA, and that the contact information at the TPA for supplying the open negotiation notice and for initiating the Federal IDR process is the same for both plans. The initiating party (the provider), demonstrates that it provided the TPA with the open negotiation notice and initiated the Federal IDR process as a batched dispute with the correct contact at the TPA for all the qualified IDR services in the batch.

The certified IDR entity must direct the initiating party (the provider) to separate any qualified IDR services that would be paid by each self-insured group health plan in two separate disputes. For operational ease, the certified IDR entity may continue the Federal IDR process with one of the two disputes and direct the initiating party to resubmit the other (i.e. the certified IDR entity may direct the parties to submit offers and make payment determinations for the qualified IDR items or services that are paid by one of the plans and mark the other qualified IDR items and services that are paid by the other plan as ineligible for that dispute). In choosing which of the disputes to resubmit, the certified IDR entity may work with the initiating party to identify which of the qualified IDR items and services should be considered in the properly batched dispute that will continue through the process, and which qualified IDR items and services should be included in the resubmitted dispute. The certified IDR entity should direct the initiating party to resubmit the dispute within four business days after the certified IDR entity notifies both parties of the inappropriately batched dispute. The certified IDR entity must collect separate certified IDR entity and administrative fees for each dispute, as appropriate.

**7. What is a bundled arrangement for purposes of the Federal IDR process?**

The preamble to the October 2021 interim final rules describes a bundled arrangement as a circumstance in which a group health plan or health insurance issuer pays a provider, facility, or provider of air ambulance services a single payment for multiple items or services furnished during an episode of care to a single patient. The Departments are clarifying in this guidance that a single payment to one provider, facility or provider of air ambulance services for multiple items or services must be

---

[11] In this example the open negotiation notice and IDR initiation notice has been supplied in accordance with 26 CFR 54.9816-8T(b), 29 CFR 2590.716-8(b), and 45 CFR 149.510(b) to the appropriate self-insured plans through the TPA who administers these plans.

**Technical Assistance for Certified IDR Entities (August 2022)**

made at the service code level for the entire bundle in order to be considered a bundled arrangement and therefore be treated as a single determination under the Federal IDR process.

In other words, for the purposes of the Federal IDR process, a bundled arrangement is an arrangement under which:

(1) a provider, facility, or provider of air ambulance services bills for multiple items or services under a single service code; or

(2) a plan or issuer makes an initial payment or notice of denial of payment to a provider, facility, or provider of air ambulance services under a single service code that represents multiple items or services (e.g., a DRG).

*Example*
The National Correct Coding Initiative (NCCI) Policy Manual[12] explains that a single comprehensive CPT code can describe multiple items or services. As discussed in the NCCI policy manual, if a physician performs bilateral mammography, the provider shall report (or for the purpose of the Federal IDR process the provider shall bill) CPT code 77066 (Diagnostic mammography... bilateral). The provider shall not report CPT code 77065 (Diagnostic mammography... unilateral) with 2 UOS or 77065 LT (unilateral left breast mammography) plus 77065 RT (unilateral right breast mammography). Under this example, the provider performed multiple items and services, therefore if the items or services are billed or reimbursed under one service code (CPT 77066), all items and services performed under that service code (CPT codes 77065 LT and 77065 RT) may be considered a bundled arrangement and treated as part of a single determination for the purposes of the Federal IDR process.

**8.  Can inappropriately batched or bundled qualified IDR items or services be considered for payment determinations if they are re-submitted as proper batched or single dispute s?**

Inappropriately batched or bundled disputes may be re-submitted as properly batched or single disputes if the qualified IDR items and services that are subject to the disputes meet all other applicable requirements, including requirements for timely initiation of the Federal IDR process (see examples in questions 5 and 6 above).

Certified IDR entities should direct the initiating party to resubmit the inappropriately batched or bundled qualified IDR items or services within four business days after the certified IDR entity notifies both parties of the inappropriately batched or bundled dispute and the steps for re-submitting the qualified IDR items or services (if they were otherwise eligible under the Federal IDR process timelines and rules) in accordance with

---

[12] The NCCI, developed by the Centers for Medicare & Medicaid Services, promotes correct national coding methodologies. Although created for the purpose of reducing improper Medicare Part B payments, the NCCI policy manual is also used by commercial payers. https://www.cms.gov/Medicare/Coding/NCCI-Coding-Edits

the technical direction provided to certified IDR entities by the Departments. If the initiating party does not resubmit the qualified IDR items or services within four business days, the qualified IDR items and services cannot be considered for payment determinations. When re-submitting disputes involving previously inappropriately batched or bundled qualified IDR items or services in new batches, bundles, or as single disputes, the initiating party may not add additional items or services for consideration. Both parties must also pay the appropriate certified IDR entity fees for single or batched disputes and administrative fees for each of the re-submitted disputes, as applicable.

Currently, the Federal IDR portal is unable to accommodate separating inappropriately batched or bundled disputes into separate disputes (even when the qualified items and services meet all of the other applicable requirements) within the system. As a purely operational matter, the re-submission of qualified IDR items or services that have been inappropriately included in a batched or bundled dispute and acceptance of those qualified IDR items or services in properly batched or single disputes must be accomplished through resubmission by following the process for initiating the Federal IDR process in the Federal IDR portal. The Departments are working to update the Federal IDR portal system so that improperly batched or bundled qualified IDR items or services can be addressed by certified IDR entities within the Federal IDR portal without resubmission by the parties, streamlining the process for addressing inappropriately batched or bundled qualified IDR items or services.

## Topic: Eligibility for the Federal IDR Process

9. **How should the certified IDR entity proceed if a non-initiating party that is a plan or issuer, states that it did not receive the open negotiation notice from an initiating party that is a provider, facility, or provider of air ambulance services[13]?**

   Step 1: Confirm that the item or service included in the dispute is a qualified IDR item or service for the Federal IDR process

   - **Have both parties attested that the Federal IDR process applies?**
     a. If *yes*, move on to step 2.

     b. If *no*, request documentation or an explanation to determine if the non-initiating party believes that the item or service included in the dispute is not subject to the Federal IDR process for any reason other than the non-initiating party's assertion that it did not receive the notice of open negotiation. If the documentation demonstrates that the item or service included in the dispute is **not subject** to the Federal IDR process for a reason other than the non-initiating party's non-receipt of the notice of open

---

[13] Throughout this section of the document, for simplicity of drafting, "provider" refers to a "provider", "facility", or "provider of air ambulance services", as applicable.

Technical Assistance for Certified IDR Entities (August 2022)

negotiation (i.e., the out-of-network payment amount for the item or service is determined subject to a specified state law), the certified IDR entity must close the dispute due to the inapplicability of the Federal IDR process. If the documentation demonstrates that the item or service included in the dispute is a qualified IDR item or service subject to the Federal IDR process, go to step 2.

Step 2: Determine whether the provider received an initial payment or notice of denial of payment

- **Did the provider receive an initial payment or notice of denial of payment from a group health plan or health insurance issuer for the qualified IDR item or service under dispute?**

  a. If **yes,** move to step 3.

  b. If **no,** the certified IDR entity must close the dispute and mark it as ineligible because a provider must receive an initial payment or notice of denial of payment from a plan or issuer in order for a party to initiate the open negotiation period and for the Federal IDR process to be initiated. The certified IDR entity may direct the provider to file a formal complaint for investigation by the appropriate Federal or state enforcement authority for the plan's or issuer's failure to timely issue an initial payment or notice of denial of payment. The provider may do so by contacting the No Surprises Help Desk. The certified IDR entity should also inform the provider that the period for open negotiation cannot be initiated until the initial payment or notice of denial of payment is received by the provider.

Step 3: Determine whether the required disclosures were included with the initial payment or notice of denial of payment

- **Request from both parties a copy of the provider remittance advice, explanation of benefits, or other documentation included with the initial payment or notice of denial of payment to determine if the initial payment or notice of denial of payment includes all of the required disclosures (see Appendix A)**

  a. If **all required disclosures were provided,** skip to step 4A.

  b. If **any required disclosures were not provided**, the certified IDR entity should determine what required disclosure(s) are missing. If any disclosures described in Appendix A are missing (*e.g*.., email address or telephone number for the plan or issuer, QPA(s) for the qualified IDR item(s) or service(s) under dispute or additional information about the QPA that is required to be provided upon request), the certified IDR entity should place the dispute in the "outreach in progress" status in the Federal IDR portal and

**Technical Assistance for Certified IDR Entities (August 2022)**

request that the plan or issuer provide the missing information to the certified IDR entity and the provider **within five business days**. Upon the earlier of the date the missing disclosure(s) is provided by the plan or issuer, or five business days have lapsed since the certified IDR entity requested the missing disclosure(s), move to step 4B. The certified IDR entity should also inform both parties that the Federal IDR process timelines are tolled while the dispute is in the "outreach in progress" status.

Later in this document, the Departments provide guidance regarding how certified IDR entities should handle situations in which a party fails to timely submit required information.

Step 4: Determine whether the initiating party timely initiated open negotiation with the non-initiating party

- **Step 4A: Can the initiating party demonstrate that it initiated open negotiation (in disputes in which all required disclosures were made with the initial payment/notice of denial of payment)?**
  a. If the initiating party can demonstrate that it initiated open negotiation with the non-initiating party within 30 business days after the initial payment or notice of denial of payment, it may initiate the Federal IDR process within four business days after the end of the 30-business-day open negotiation period (or within 30 business days of the end of the 90-calendar-day cooling off period).
     i. Examples of evidence demonstrating the initiation of the open negotiation period:
        1. Screen shots, emails or other evidence to demonstrate that the initiating party attempted to transmit the notice of open negotiation to the non-initiating party using the non-initiating party's contact information provided with the initial payment or notice of denial of payment.

        2. Attestation or other evidence that the initiating party uploaded or attempted to upload an open negotiation notice into the non-initiating party's portal (even if the portal denied acceptance of the notice).

     If the initiating party can demonstrate that it initiated open negotiation with the non-initiating party within 30 business days after the initial payment or notice of denial of payment, but 30 business days since initiation of open negotiation have not lapsed, then the parties must exhaust the remaining number of days before initiating the Federal IDR process (for example, if only 15 business days have passed since the initiation of open negotiation, the disputing parties have 15 more business days before either can initiate the

**Technical Assistance for Certified IDR Entities (August 2022)**

Federal IDR process). In that case, the certified IDR entity should close the dispute as ineligible and note that the parties failed to exhaust the open negotiation period. Once the open negotiation period has lapsed, if the parties do not reach agreement on an out-of-network rate, either party may choose to initiate the Federal IDR process within four business days after the end of the open negotiation period.

b. If the initiating party cannot demonstrate that it initiated open negotiation within 30 business days after the initial payment or notice of denial of payment, and 30 business days have passed, the certified IDR entity must close the dispute for failure to properly initiate open negotiation. *However, if the initiating party believes there is a reason to excuse the failure to timely initiate open negotiation (for example, a technical problem or reasonable confusion regarding IDR initiation procedures), the certified IDR entity may remind the initiating party of its ability to apply for an extenuating circumstance extension for review by the Departments.*

    i. Examples of a failure to demonstrate that the initiating party initiated open negotiation:

        1. Initiating party says that it did not take any action to initiate open negotiation.

        2. Initiating party took steps to initiate open negotiation, but did not send the notice of open negotiation to the point of contact included with the initial payment or notice of denial of payment, or to the point of contact otherwise provided by the non-initiating party as a means to initiate open negotiation (for example, the initiating party mistyped the email address or used an email address other than the one provided with the initial payment or notice of denial of payment or otherwise provided by the plan or issuer as a means to contact the plan or issuer to initiate open negotiation).

If the initiating party cannot demonstrate that it initiated open negotiation within 30 business days after the initial payment or notice of denial of payment, but 30 business days have not lapsed, the certified IDR entity may advise the initiating party that it can send the open negotiation notice before the end of the 30-business-day period to the non-initiating party to begin the 30-business-day open negotiation period. In this case, the certified IDR entity should close the dispute and mark it as ineligible.

- **Step 4B: Can the initiating party demonstrate that it initiated open negotiation (in cases in which any or all of the required disclosures were NOT made with the initial payment/notice of denial of payment)?**

**Technical Assistance for Certified IDR Entities (August 2022)**

a.  If the initiating party can demonstrate it initiated open negotiation with the non-initiating party within 30 business days after the initial payment or notice of denial of payment, it may initiate the Federal IDR process within the four business days after the end of the 30-business-day open negotiation period (or within 30 business days of the end of the 90-calendar-day cooling off period).

   i.  Examples of evidence demonstrating the initiation of open negotiation:

      1.  Screen shots, emails or other evidence to demonstrate that the initiating party attempted to contact the non-initiating party using the contact information provided with the initial payment or notice of denial of payment, if included, or any contact information associated with the non-initiating party if the contact information was not included with the initial payment or notice of denial of payment.

      2.  Attestation or other evidence that the initiating party uploaded or attempted to upload an open negotiation notice into the non-initiating party's portal (even if the portal denied acceptance of the notice).

   If the initiating party can demonstrate that it initiated open negotiation with the non-initiating party within 30 business days after the initial payment or notice of denial of payment, but 30 business days since the initiation of open negotiation have not lapsed, then the parties must exhaust the remaining number of days before initiating the Federal IDR process (for example, if only 15 business days have passed since the steps were first taken to initiate open negotiation, the disputing parties have 15 more business days before either can initiate the Federal IDR process). In that case, the certified IDR entity should close the dispute as ineligible and note that the parties failed to exhaust the open negotiation period. Once the open negotiation period has lapsed, if the parties do not reach agreement on an out-of-network rate, either party may choose to initiate the Federal IDR process within four business days after the end of open negotiation.

b.  If an initiating party cannot demonstrate that it initiated open negotiation with the non-initiating party within 30 business days after the initial payment or notice of denial of payment, the initiating party will be given another opportunity to initiate open negotiations because the plan or issuer did not provide all the required disclosures.  The open negotiation period must be initiated within 30 business days after the earlier of the date the certified IDR entity and initiating party received the required disclosures or five business

Technical Assistance for Certified IDR Entities (August 2022)

days have lapsed since the certified IDR entity requested the missing
disclosure.

The certified IDR entity should place the dispute "on hold" in the Federal IDR
portal and mark it as pending open negotiation, while the initiating party
fulfills the 30-business-day open negotiation period requirement. After the
open negotiation period has lapsed, the initiating party must inform the
certified IDR entity, within four business days of the end of the 30-business-
day open negotiation period, as to whether an agreement for an out-of-
network payment amount was reached during the open negotiation period,
if so, the certified IDR entity should close the dispute in the Federal IDR
portal,  if not, the case should proceed to the Federal IDR process notice of
offer step.

10. **How should the certified IDR entity proceed when the non-initiating party states that
it never received the notice of IDR initiation from the initiating party?**

Step 1: Confirm that the item or service included in the dispute is a qualified IDR item or
service for the Federal IDR process.

- **Have both parties attested that the Federal IDR process applies?**
  a. If *yes*, move on to step 2.

  b. If *no*, request documentation or an explanation to determine if the non-
  initiating party believes that the item or service included in the dispute is not
  subject to the Federal IDR process for a reason other than the non-initiating
  party's assertion that it did not receive the notice of IDR initiation. If the
  documentation demonstrates that the item or service included in the dispute
  is **not subject** to the Federal IDR process for a reason other than the non-
  initiating party's non-receipt of the notice of IDR initiation (i.e., the out-of-
  network payment amount for the item or service is subject to a specified
  state law), the certified IDR entity must close the dispute due to the
  inapplicability of the Federal IDR process. If the documentation demonstrates
  that the item or service included in the dispute is a qualified IDR item or
  service subject to the Federal IDR process go to step 2.

Step 2: Confirm that the 30-busineses-day open negotiation period was initiated.

- **Do both parties agree that an open negotiation notice was provided by one party
to the other within 30 business days after the initial payment or notice of denial of
payment for the qualified IDR item or service under dispute?**

Technical Assistance for Certified IDR Entities (August 2022)

    a. If ***yes,*** **or if the certified IDR entity has already determined that there is evidence demonstrating that the open negotiation period occurred,** move to step 3.

    b. If ***no,*** follow the steps from question 9 <u>above</u> for determining if the open negotiation period was initiated.

<u>Step 3: Determine whether the required disclosures were included with the initial payment or notice of denial of payment</u>

- **Request from both parties a copy of the provider remittance advice, explanation of benefits, or other documentation included with the initial payment or notice of denial of payment to determine if the payment or notice of denial of payment includes all of the required disclosures (see Appendix A)**

    a. If ***all required disclosures were provided,*** skip to step 4A.

    b. If ***any required disclosures were not provided***, the certified IDR entity should determine what required disclosure(s) are missing. If the contact information (i.e., email address and telephone number for the plan or issuer), QPA(s) for qualified IDR item(s) or service(s) under dispute, is missing, the certified IDR entity should place the dispute in the "outreach in progress" status in the Federal IDR portal and request that the plan or issuer provide the missing information to the certified IDR entity and provider **within five business days**. Similarly, if the provider requested that the plan or issuer provide certain additional information about the QPA (see Appendix A) and the plan or issuer failed to provide it, the certified IDR entity should place the dispute in the "outreach in progress" status in the Federal IDR portal and request that the plan or issuer provide the missing information to the certified IDR entity and the provider **within five business days**. Once missing information is obtained (or five business days have lapsed since the certified IDR entity reached out regarding the missing information), move to step 4B. The certified IDR entity should inform both parties that the Federal IDR process timelines are tolled while the dispute is in the "outreach in progress" status .

    <u>Later in this document</u>, the Departments provide guidance regarding how certified IDR entities should handle situations in which a party fails to timely submit required information.

<u>Step 4: Determine whether the initiating party timely initiated the Federal IDR process</u>

- **Step 4A: Can the initiating party demonstrate that it provided the notice of IDR initiation to the non-initiating party (in cases in which all required disclosures were made with the initial payment or notice of denial of payment)?**

**Technical Assistance for Certified IDR Entities (August 2022)**

a.   If the initiating party can demonstrate that it provided the non-initiating party with the notice of IDR initiation within four business days after the end of the 30-business-day open negotiation period (or within 30 business days of the end of the 90-calendar-day cooling off period), the dispute can continue to the submission of offer step of the Federal IDR process.

  i.   Examples of evidence demonstrating Federal IDR process initiation:

    1.   Screen shots, emails or other evidence that the notice of IDR initiation was sent to the contact provided with the initial payment or notice of denial of payment.

    2.   Attestation or evidence that the initiating party uploaded or attempted to upload the notice of IDR initiation into the non-initiating party's portal (even if the portal denied acceptance of the notice).

b.   If the initiating party cannot demonstrate that it provided the non-initiating party with a notice of IDR initiation within four business days after the end of the 30-business-day open negotiation period, the dispute must be closed for failure to timely initiate the Federal IDR process. *However, if the initiating party believes there is a reason to excuse the failure to timely initiate the Federal IDR process (for example, a technical problem or reasonable confusion regarding the initiation procedures), the certified IDR entity may remind the initiating party of its ability to apply for an extenuating circumstance extension for review by the Departments.*

  i.   Examples of a failure to initiate IDR:

    1.   Initiating party says that it did not send the notice of initiation to the non-initiating party.

    2.   Initiating party took steps to initiate IDR, but did not send the notice of initiation to the point of contact included with the initial payment or notice of denial of payment, or point of contact otherwise provided by the non-initiating party as a means to initiate IDR (for example, the initiating party mistyped the email address or used an email address other than the one provided with the initial payment or notice of denial of payment or otherwise provided by the plan or issuer as a means to contact the plan or issuer to initiate IDR).

- **Step 4B: Can the initiating party demonstrate that it provided the notice of IDR initiation to the non-initiating party (in cases in which any or all of the required disclosures were NOT made with the initial payment or notice of denial of payment)?**

17

**Technical Assistance for Certified IDR Entities (August 2022)**

   a.  If the initiating party can demonstrate that it provided the non-initiating party with the notice of IDR initiation within four business days after the end of the 30-business-day open negotiation period (or within 30 business days of the end of the 90-calendar-day cooling off period), the dispute can continue to the submission of offer step of the Federal IDR process.

       i.  Examples of evidence demonstrating Federal IDR process initiation:

          1.  Screen shots, emails or other evidence to demonstrate that the initiating party attempted to submit the notice of IDR initiation to the non-initiating party using the contact information provided with the initial payment or notice of denial of payment, if included, or any contact information associated with the non-initiating party if the contact information was not included with the initial payment or notice of denial of payment.

          2.  Attestation or other evidence that the initiating party uploaded or attempted to upload the notice of IDR initiation into the non-initiating party's portal (even if the portal denied acceptance of the notice).

   b.  If the initiating party cannot demonstrate that it provided the non-initiating party with a notice of IDR initiation, the initiating party will be given another opportunity to initiate IDR because the plan or issuer did not provide all the required disclosures with the initial payment or notice of denial of payment. After the certified IDR entity requests the required disclosures as described in Step 3 above, the notice of IDR initiation must be sent within 4 business days after the earlier of the date the initiating party receives the required disclosures or five business days have lapsed since the certified IDR entity requested the missing disclosures. Once the non-initiating party receives the notice of IDR initiation the dispute may continue to the submission of offer step of the Federal IDR process. If the initiating party fails to submit the notice of IDR initiation within four business days after the earlier of the date the initiating party receives the missing disclosures or five business days have lapsed since the certified IDR entity requested the missing disclosure, the certified IDR entity must close the dispute for failure to timely initiate the Federal IDR process. *However, if the initiating party believes there is a reason to excuse the failure to timely initiate the Federal IDR process (for example, a technical problem or reasonable confusion regarding the initiation procedures), the certified IDR entity may advise the initiating party of its ability to apply for an extenuating circumstance extension for review by the Departments.*

**Technical Assistance for Certified IDR Entities (August 2022)**

## Topic: Failure to Submit Required Information in Response to a Certified IDR Entity's Request

**11.  What should a certified IDR entity do if the initiating party or non-initiating party fails to submit information in response to a certified IDR entity's request?**

Some of the examples in this guidance document involve scenarios in which a party to the Federal IDR process fails to provide required information to the other party. In the event that a certified IDR entity requests that a party submit information by a certain date, and the party fails to timely submit the information, the certified IDR entity should resolve the dispute based on the information that *has* been submitted by the parties by the applicable deadline. Accordingly, any party that fails to submit required information in accordance with a request from a certified IDR entity bears the risk that its failure may negatively affect the outcome of the Federal IDR process for that party.

***If a party believes another party's failure to provide information potentially violates the No Surprises Act or its implementing regulations, the certified IDR entity should remind the party of the ability to file a complaint through the No Surprises Help Desk, so that the circumstances can be reported to the appropriate Federal or state enforcement entity.***

Technical Assistance for Certified IDR Entities (August 2022)

# Appendix A

### Disclosures required to be made with the initial payment or notice of denial of payment or upon request

Plans and issuers must provide the following information regarding the QPA to nonparticipating providers, nonparticipating emergency facilities, and nonparticipating providers of air ambulance services, where the recognized amount (or in the case of air ambulance services, the amount upon which cost sharing is based) with respect to an item or service furnished by the provider, facility, or provider of air ambulance services is the QPA.[14]

- ☐ The QPA for each item or service involved.
- ☐ A statement certifying that the plan or issuer has determined that the QPA applies for the purposes of the recognized amount (or, in the case of air ambulance services, for calculating the participant's, beneficiary's, or enrollee's cost sharing), and each QPA was determined in compliance with the methodology established in the July 2021 interim final rules.
- ☐ A statement that if the provider or facility, as applicable, wishes to initiate a 30-day open negotiation period for purposes of determining the amount of total payment, the provider or facility may contact the appropriate person or office to initiate open negotiation, and that if the 30-day-negotiation period does not result in a determination, generally, the provider or facility may initiate the Federal IDR within four days after the end of the open negotiation period.
- ☐ Contact information, including a telephone number **and** email address, for the appropriate person or office to initiate open negotiation for purposes of determining an amount of payment (including cost sharing) for such item or service.
- ☐ Upon request of the provider or facility, the plan or issuer must provide, in a timely manner, the following information:
  - ☐ Whether the QPA for the item or service involved included contracted rates that were not on a fee-for-service basis for those specific item or service and whether the QPA for the item or service was determined using underlying fee schedule rates or a derived amount.
  - ☐ If a related service code was used to determine the QPA for a new service code, information to identify the related service code.
  - ☐ If the plan or issuer used an eligible database to determine the QPA, information to identify which database was used.
  - ☐ If applicable, a statement that the plan's or issuer's contracted rates include risk-sharing, bonus, or other incentive-based or retrospective payments or payment adjustments for covered item or service that were excluded for purposes of calculating the QPA.

---

[14] 45 CFR 149.140(d), 26 CFR 54.9816-6T(d), and 29 CFR 2590.716-6(d)

**Technical Assistance for Certified IDR Entities (August 2022)**



Department of Health & Human Services 200 Independence Avenue, S.W. Washington, D.C. 20201
Toll Free Call Center: 1-877-696-6775
www.hhs.gov



Department of Labor 200 Constitution Ave NW Washington, DC 20210
1-866-4-USA-DOL / 1-866-487-2365
www.dol.gov



Department of the Treasury 1500 Pennsylvania Ave., N.W. Washington, D.C. 20220
General Information: (202) 622-2000
www.treasury.gov

Federal Independent Dispute Resolution (IDR) Process

Technical Assistance for Certified IDR Entities