# EXHIBIT 8

**Supplemental Background on Federal Independent Dispute Resolution Public Use Files**
**July 1, 2024 – December 31, 2024**

The No Surprises Act (NSA) and its implementing regulations[1] establish a Federal Independent Dispute Resolution (IDR) process that out-of-network (OON) providers, facilities, and providers of air ambulance services, and group health plans, health insurance issuers offering group and individual health insurance coverage, and Federal Employees Health Benefits (FEHB) Program carriers (collectively, disputing parties) may use to determine the OON rate for qualified IDR items or services after an unsuccessful open negotiation period. The Departments of Health and Human Services, Labor, and the Treasury (the Departments) launched the Federal IDR portal on April 15, 2022, to facilitate this process. The statute requires the Departments to publish on a public website certain information about the Federal IDR process.[2]

To promote transparency in the implementation of the Federal IDR portal, the Departments provided several status updates as well as initial reports for calendar quarters in 2022.[3,4] On February 15, 2024, the Departments published the Federal IDR public use file (IDR PUF) and Federal IDR supplemental tables for the first two calendar quarters of 2023. On June 13, 2024, the Departments released the IDR PUF and supplemental tables for the third and fourth calendar quarters of 2023. On March 18, 2025, the Departments released the IDR PUF and supplemental tables for the first and second calendar quarters of 2024. The Departments are now releasing the IDR PUF and supplemental tables for the third and fourth calendar quarters of 2024.

The IDR PUF includes detailed information for each payment determination, including payment determination outcomes and offer amounts. In addition to the IDR PUF, the Departments are publishing supplemental tables with summary information including the number of payment disputes initiated, closed, and the reasons for closure. The information in the IDR PUF and supplemental tables is intended to promote Federal IDR process transparency and provide required information to the public.

Similar to the first six months of 2024, the last six months of 2024 were characterized by an increasingly large volume of disputes submitted through the Federal IDR portal, continuing complexity in determining whether disputes were eligible for the Federal IDR process, and continued changes to

---

[1] Requirements Related to Surprise Billing; Part I, 86 FR 36872 (July 13, 2021), https://www.federalregister.gov/documents/2021/07/13/2021-14379/requirements-related-to-surprise-billing-part-i; Requirements Related to Surprise Billing; Part II, 86 FR 55980 (October 7, 2021), https://www.federalregister.gov/documents/2021/10/07/2021-21441/requirements-related-to-surprise-billing- part-ii; and Requirements Related to Surprise Billing, 87 FR 52618 (August 26, 2022), https://www.federalregister.gov/documents/2022/08/26/2022-18202/requirements-related-to-surprise-billing.

[2] *See* Code section 9816(c)(7), ERISA section 716(c)(7), and PHS Act section 2799A-1(c)(7).

[3] *See* Federal Independent Dispute Resolution Process Status Update (April 27, 2023), available at https://www.cms.gov/files/document/federal-idr-processstatus-update-april-2023.pdf; Federal Independent Dispute Resolution Process Status Update (Aug. 19, 2022), available at: https://www.cms.gov/files/document/federal-idr-process-status-update-august-2022.pdf; and Amendment to the Calendar Year 2023 Fee Guidance for the Federal Independent Dispute Resolution Process Under the No Surprises Act: Change in Administrative Fee (Dec. 23, 2022), available at: https://www.cms.gov/cciio/resources/regulations- and-guidance/ downloads/amended-cy2023-fee-guidance-federal-independent-dispute-resolution-process- nsa.pdf.

[4] *See* Initial Report on the Federal Independent Dispute Resolution (IDR) Process, April 15 – September 30, 2022, available at: https://www.cms.gov/files/document/initial-report-idr-april-15-september-30-2022.pdf; and Partial Report on the Independent Dispute Resolution (IDR Process, October 1 – December 31, 2022, available at: https://www.cms.gov/files/document/partial-report-idr-process-octoberdecember-2022.pdf.

Federal IDR process operations as a result of multiple court orders in 2023.[5,6]  Additionally, certified IDR entities continued their efforts to scale up their operations to contend with the large volume of disputes, making substantially more payment determinations in the last six months of 2024 compared to the first six months of 2024. Throughout the 12-month period of January 1, 2024, through December 31, 2024, certified IDR entities progressively increased the number of payment determinations made each calendar quarter.

*High Volume of Disputes*

Between July 1, 2024, and December 31, 2024, disputing parties initiated 853,374 disputes through the Federal IDR portal, 40% more than the first six months of 2024 (610,498 disputes). Similar to the first six months of 2024, the majority of disputes were initiated by a small number of initiating parties or their representatives. The top ten initiating parties represented approximately 71% of all disputes initiated in the last six months of 2024, a slight increase from the first six months of 2024 (69%). Many of the top initiating parties are (or are represented by) large practice management companies, medical practices, or revenue cycle management companies representing hundreds of individual practices, providers, or facilities. The top three initiating parties (Radiology Partners, HaloMD, and Team Health) represent thousands of clinicians across multiple states and accounted for approximately 43% of all disputes initiated in the last six months of 2024. In the last six months of 2024, health care facilities or their representatives initiated a similar share of disputes (13%), compared to the first six months of 2024 (14%).

Certified IDR entities have scaled up their operations to address the high volume of disputes. Certified IDR entities rendered 698,968 payment determinations in the last six months of 2024, a 101% increase from the first six months of 2024 (348,607 determinations). Batched disputes accounted for approximately 27% (188,045) of all payment determinations rendered by certified IDR entities in the last six months of 2024, close to double the share in the first six months of 2024 (15%).  Overall, certified IDR entities rendered 500% more payment determinations in 2024 (1,047,575) than in 2023 (209,346).[7]

---

[5] On August 3, 2023, the U.S. District Court for the Eastern District of Texas (district court) issued an opinion and order in Tex. Med. Ass'n, et al. v. U.S. Dep't of Health and Human Servs., Case No. 6:23-cv-59-JDK (TMA IV). This opinion and order vacated the batching provisions of 45 CFR. 149.510(c)(3)(i)(C), 26 CFR 54.9816-8T(c)(3)(i)(C), and 29 CFR 2590.716-8(c)(3)(i)(C) and vacated the $350 per party administrative fee established by guidance issued on December 23, 2022. Subsequently, on August 24, 2023, the district court issued an opinion and order in Tex. Med. Ass'n, et al. v. U.S. Dep't of Health and Human Servs., Case No. 6:22-cv450-JDK (TMA III), vacating certain portions of 45 CFR 149.130 and 149.140, 26 CFR 54.9816-6T and 54.9817-1T, and 29 CFR 2590.716-6 and 2590.717-1. The district court also vacated 5 CFR 890.114(a), insofar as it requires compliance with the vacated regulations and guidance.

[6] See No Surprises Act Independent Dispute Resolution (IDR) Batching and Air Ambulance Policy Frequently Asked Questions (Nov. 2023), available at: https://www.cms.gov/files/document/faqs-batching-air-ambulance.pdf; FAQs about Affordable Care Act and Consolidated Appropriations Act, 2023 Implementation Part 63 (Nov. 2023), available at: https://www.cms.gov/files/document/faqs-part-63.pdf; FAQs about Consolidated Appropriations Act, 2021 Implementation Part 62 (Oct. 2023), available at: https://www.cms.gov/files/document/faqs-part-62.pdf; and the August 2023 IDR Administrative Fees FAQs (Aug. 2023), available at: https://www.cms.gov/files/document/idr-admin-fees-faqs-081123-508.pdf-0.

[7] In 2023, payment determinations were paused for several months, necessitated by several Texas Medical Association (TMA) court rulings, leading to a lower number of determinations than expected. After TMA II, payment determinations were paused from 2/6/23 - 3/17/23. After TMA III and IV, payment determinations were paused from 8/4/23 – 9/21/23 for single disputes and were paused until 12/15/23 for batched disputes.

Certified IDR entities closed 911,088 disputes in the last six months of 2024, approximately a 98% increase in the number of disputes closed in the first six months of 2024 (460,774 disputes). Overall, certified IDR entities closed 440% more disputes in 2024 (1,371,862) than during 2023 (311,863). Dispute closures include payment determinations, determinations that a dispute was ineligible for the Federal IDR process, withdrawn disputes, parties reaching a settlement, and closures for administrative reasons (e.g. unpaid fees).

Despite the increase in the number of payment determinations, there are disputing parties who are still awaiting payment determinations, due in large part to the high volume of disputes initiated. The Departments' objective is to help certified IDR entities and disputing parties obtain resolution on disputes as expeditiously as possible.

*Dispute Eligibility*

The primary cause of delays in processing disputes continues to be the complexity of determining whether disputes are eligible for the Federal IDR process. For all disputes, the certified IDR entity must confirm dispute eligibility before the dispute can proceed. These reviews involve complex eligibility determinations that require certified IDR entities to expend considerable time and resources. Even after initial certified entity review, non-initiating parties challenged the eligibility of 43% of initiated disputes in the last six months of 2024 (370,529 of 853,374), a slight decrease from 45% in the first six months of 2024.

Eligibility reviews conducted by certified IDR entities are processed more quickly when both disputing parties provide all the required information at initiation. To that end, the Departments added data elements to the dispute initiation form and directed the parties to attach documents supporting or contesting eligibility during dispute initiation, to ensure certified IDR entities have all necessary information to determine eligibility earlier in the process. The Departments have also published technical assistance to help disputing parties and certified IDR entities better determine eligibility and resolve disputes more expeditiously.[8, 9]

As a result of process improvements and greater familiarity among disputing parties of eligibility requirements, the percent of disputes found ineligible declined significantly from 69% in the first half of 2022 to 22% in the first six months of 2023, then held stable at approximately 22% throughout 2023. The percent of disputes found ineligible further declined to 19% throughout 2024. The high volume of disputes and the complexity of making eligibility determinations remained a challenge throughout the second half of 2024.

The Departments have proposed additional policy and operational improvements through proposed rulemaking that, if finalized, would improve the process for determining the eligibility of disputes and ultimately increase the speed with which certified IDR entities render payment determinations.[10]

---

[8] Federal Independent Dispute Resolution Process Guidance for Disputing Parties (Updated December 2023), available at: https://www.cms.gov/files/document/federal-independent-dispute-resolution-guidance-disputing-parties.pdf.

[9] Federal Independent Dispute Resolution (IDR) Process Guidance for Certified IDR Entities (August 2022), available at: https://www.cms.gov/files/document/ta-certified-independent-dispute-resolution-entities-august-2022.pdf.

[10] Federal Independent Dispute Resolution Operations, 88 FR 75744 (November 3, 2023), https://www.federalregister.gov/documents/2023/11/03/2023-23716/federal-independent-dispute-resolution- operations.

*Results of Payment Determinations*

Certified IDR entities rendered payment determinations in 698,968 disputes from July 1 through December 31, 2024. Emergency department services made up the greatest share (40%) of payment determinations, and radiology services made up 20% of payment determinations. Providers, facilities, or air ambulance providers were the prevailing party in approximately 85% of payment determinations made in the last six months of 2024. Health plans and issuers were the prevailing parties in approximately 15% of payment determinations.

Default decisions accounted for a larger portion of determinations in the last six months of 2024 (22%) compared to the first six months of 2024 (16%).[11] Providers, facilities, and providers of air ambulance services also won a notably larger share of default decisions in the last six months of 2024 (87%) compared to the first six months of 2024 (75%). Providers, facilities, and providers of air ambulance services won a similar (85%) share of decisions where both parties paid and submitted offers, compared to the first six months of 2024 (86%). However, due to default judgements accounting for a greater share of overall determinations and providers, facilities, and providers of air ambulance services winning a greater share of default judgements, the overall win rate for providers, facilities, and providers of air ambulance services increased slightly by 1% between the first six months of 2024 (84%) and the last six months of 2024 (85%).

The prevailing offer was higher than the qualifying payment amount (QPA) in approximately 85% of payment determinations made in the last six months of 2024.[12] The amount of the prevailing offers relative to the QPA varied by specialty and by the cost of the service. The supplemental tables released with this report detail the median prevailing offer amount relative to the QPA, stratified by specialty and cost band of service. The Departments note that low-dollar items and services had higher prevailing offers expressed as a percent of the QPA, partly because a small dollar difference translates into a large percentage difference.

Given that providers, facilities, or provider of air ambulance service providers prevailed in the majority (85%) of payment determinations during this period, the median prevailing offer is often the offer from the provider, facility, or provider of air ambulance services. While health plans and issuers often benchmarked their offers to the QPA, providers, facilities, and air ambulance service providers often benchmarked their offers to past OON payment amounts with the disputing plan or issuers and past in-network rates with either the disputing plan or issuer, or with a different plan or issuer in the same state.

---

[11] If one party failed to submit an offer or pay their fees, and the other party submitted an offer and paid their fees, the certified IDR entity must rule in favor of the party that submitted an offer and paid their fees. Please refer to Section 5.4 of Federal IDR Process Guidance for Certified IDR Entities, available at: https://www.cms.gov/cciio/resources/regulations-and-guidance/downloads/federal-independent-dispute- resolution-process-guidance-for-certified-idr-entities.pdf.

[12] This figure was calculated by dividing the number of payment determinations made in the last six months of 2023 where the prevailing offer was greater than the QPA by the number of payment determinations made in the last six months of 2023 where both the prevailing offer and QPA were reported.

*Conclusion*

The last six months of 2024 were characterized by a large volume of dispute initiations, continued complexity in determining dispute eligibility, and substantial increases in the number of payment determinations made and disputes closed by certified IDR entities. The Departments and certified IDR entities continued to implement changes to enhance the overall efficiency of the Federal IDR process and manage dispute volume. The Departments have proposed additional policy and operational improvements that, if finalized, would further improve the process for determining the eligibility of disputes and ultimately continue to increase the speed at which certified IDR entities render payment determinations.

The Departments are committed to helping certified IDR entities and disputing parties obtain resolution on disputes as expeditiously as possible and to promoting efficiency and transparency in the Federal IDR process.



Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Toll Free Call Center: 1-877-696-6775
www.hhs.gov



Department of Labor
200 Constitution Ave., N.W.
Washington, DC 20210
1-866-4-USA-DOL / 1-866-487-2365
www.dol.gov



Department of the Treasury
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220
General Information: (202) 622-2000
www.treasury.gov