**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, | §<br>§<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 5:25-CV-132-RWS |
| HALOMD, LLC, ALLA LAROQUE, SCOTT LAROQUE, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**ORDER**

Before the Court are Defendants HaloMD, LLC, Alla LaRoque, and Scott LaRoque's Joint Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) and Related Request for Judicial Notice of Public Documents (Docket No. 15)[1] and Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Rules 12(b)(1) and 12(b)(6) Motions to Dismiss (Docket No. 31). Defendants' motion to dismiss is fully briefed (Docket Nos. 15, 21, 28, 39), and Defendants' motion to stay is briefed through a response (Docket Nos. 31, 35). On March 10, 2026, the Court heard oral argument on the motions. Docket No. 50. For the reasons set forth below, Defendants' motion to dismiss (Docket No. 15) is **GRANTED**, and Defendants' motion to stay (Docket No. 31) is **DENIED-AS-MOOT**.

**BACKGROUND**

Plaintiff filed this lawsuit on August 28, 2025, alleging that Defendants developed a scheme to abuse the federal and Texas independent dispute resolution ("IDR") processes for

---

[1] While Defendants styled their briefing as "joint motions," their arguments are contained in a single document, so the Court refers to Docket No. 15 as a "motion to dismiss."

determining the appropriate reimbursement amounts for certain medical items and services. Docket No. 2 (Complaint) at ¶¶ 89–99. As part of this alleged scheme, Plaintiff complains that HaloMD, LLC initiated IDR proceedings for ineligible items, services, and claims. *Id.* at ¶ 12. Plaintiff contends that, in combination with the submission of ineligible items and services for IDR, Defendants used "delay and dump tactics" by "submit[ting] massive numbers of open negotiations and IDR initiations all at once." *Id.* at ¶¶ 199–201. As a consequence, Plaintiff claims that the alleged scheme has resulted in tens of millions of dollars in ineligible awards for out-of-network providers that are represented by HaloMD in the IDR process. *Id.* at ¶ 331.

Defendants filed the instant motion to dismiss on November 18, 2025, claiming that the Court lacks subject matter jurisdiction, or, alternatively, that Plaintiff has failed to state a claim for relief.[2] *See generally* Docket No. 15. On February 13, 2026, Defendants moved to stay discovery pending the resolution of the motion to dismiss. Docket No. 31.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of a federal court to hear a claim. A motion to dismiss under Rule 12(b)(1) is properly granted when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The

---

[2] Since the hearing on Defendants' motions, Defendants have filed three notices of supplemental authority. Docket Nos. 58, 60, 62. The notices alert the Court to orders on motions to dismiss in other district courts concerning similar issues presented here. *See generally* Docket Nos. 58-1, 60-1, 62-1. Defendants ask the Court to take judicial notice of these orders. While Plaintiff opposes the applicability of the supplemental authority, it does not challenge judicial notice. *See* Docket Nos. 59, 61, 63. Accordingly, the Court takes judicial notice of the supplemental authority. *See Prescott v. Catoe*, No. 4:20-CV-00169-ALM-CAN, 2021 WL 11486160, at *1 n.1 ("A court may take judicial notice of publicly available documents, including filings, orders, and judgments from other lawsuits.").

party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion to dismiss under Rule 12(b)(1) should be granted "if it appears certain that the plaintiff cannot prove any set of facts in support" of his or her claims. *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 Fed. Appx. 235, 239 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.*

## II.     Collateral Attack

A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal." *Collateral Attack*, BLACK'S LAW DICTIONARY (12th ed. 2024). The Fifth Circuit bars collateral attacks on judgments rendered in judicial and quasi-judicial (*e.g.*, arbitration) proceedings. *See Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 487–90 (5th Cir. 2020); *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 747–50 (5th Cir. 2008). In the context of arbitration, the Fifth Circuit has explained that a plaintiff may "be engaged in collateral attacks even though [he or she] d[oes] not attempt to relitigate the facts and defenses of the underlying disputes that had prompted arbitration, but instead . . . alleg[es] that wrongdoing . . . tainted the arbitration proceedings and caused unfair awards." *Gulf Petro*, 512 F.3d at 750. Thus, "[t]he test for a collateral attack is not merely whether the claims [in the present suit] 'attempt to relitigate the facts and defenses that were raised in the prior arbitration.' " *Tex. Brine*, 955 F.3d at 488 (quoting *Gulf*

*Petro*, 512 F.3d at 749–59). Instead, courts "look to 'the relationship between the alleged wrongdoing, purported harm, and arbitration award.'" *Id.* (quoting *Gulf Petro*, 512 F.3d at 749).

ANALYSIS

**I.      Defendants' Joint Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) and Related Request for Judicial Notice of Public Documents (Docket No. 15)**

Plaintiff complains that Defendants' scheme involved submitting ineligible claims for IDR under both the No Surprises Act ("NSA") and Texas law. The Court first considers Plaintiff's claims in the context of the NSA and federal law before turning to Plaintiff's claims related to the Texas IDR process.

**A.      The NSA's Statutory Bar to Judicial Review of IDR Awards and Collateral Attack**

**1.      The Federal IDR Process**

In 2020, Congress passed the NSA to combat predatory healthcare price billing. Docket No. 2 (Complaint) at ¶¶ 33–34. Among other things, the NSA established an IDR process to resolve claims between out-of-network providers and health plans. *Id.* at ¶ 36. The NSA requires the Departments of Health and Human Services, Labor, and Treasury (the "Departments") to promulgate regulations establishing procedures for IDR. 42 U.S.C. § 300gg-111(c)(2).

To be eligible for IDR, the items and services at issue must fall within the NSA's scope (*e.g.*, services must be rendered by an out-of-network provider). Docket No. 2 (Complaint) at ¶ 37. The party requesting IDR must provide information related to eligibility and attest that the items and services meet the eligibility requirements. *Id.* at ¶ 40. The party responding to the IDR has an opportunity to dispute eligibility. *See* Docket No. 15 at 10 ("If the non-initiating party believes that the Federal IDR Process is not applicable, the non-initiating party must notify the Departments by submitting the relevant information through the Federal IDR portal as part of the certified IDR entity selection process." (quoting Docket No. 15-5 at 7)). According to Defendants,

"[i]n 2024, non-initiating parties objected to IDR eligibility 44% of the time, but only 19% of disputes were determined to be ineligible." *Id.* at 11–12. In fact, Plaintiff acknowledges it challenged the eligibility of at least a portion of the underlying items and services at issue in its IDRs with HaloMD. Docket No. 2 (Complaint) at ¶¶ 109–10, 123, 147.

Within three to six days after an IDR is initiated, the Departments randomly select an IDR entity absent an agreement by the parties. Docket No. 15-4 at 6. Once an IDR entity is selected, the entity has three days to "determine whether the Federal IDR Process is applicable, thereby finalizing the selection." *Id.* The parties then submit their offers and pay the IDR entity and any administrative fees. *Id.* Within 30 days of the selection of the IDR entity, the entity must determine the payment amount for the item or service and select one of the parties' competing offers. *Id.* As Plaintiff explains, the IDR entity's "decision is then binding upon the parties, subject to limited judicial review, and the non-prevailing party is responsible for administrative and IDR [entity] fees." Docket No. 2 (Complaint) at ¶ 38(g) (citing 42 U.S.C. § 300gg-111(c)(5)(F)). Indeed, the NSA provides that IDR decisions "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

### 2.    Analysis

Defendants contend that IDR decisions are generally not judicially reviewable and therefore Plaintiff's claims should be dismissed. Docket No. 15 at 15. Specifically, Defendants argue that the NSA's bar on judicial review prevents the Court from considering Plaintiff's claims altogether. *Id.* at 15–16. Defendants also aver that the collateral attack doctrine bars Plaintiff's claims because the claims would require the parties to "re-adjudicat[e] the 'over 42,000' individual IDR disputes [Plaintiff] claims were wrongfully procured and decided." *Id.* at 16.

Plaintiff argues that the NSA's statutory bar against judicial review does not preclude their claims because the NSA only prevents review of "payment determination[s]," not eligibility decisions. Docket No. 21 at 9–10 (citing 42 U.S.C. § 300gg-111(c)(5)(E)). According to Plaintiff, "[t]here is no indication—let alone a 'clear and convincing' one—that Congress intended to foreclose judicial review of Defendants' eligibility scheme in the Federal IDR Process." *Id.* at 10. Plaintiff explains that "[a]lthough the IDR process differ[s] in important respects from arbitration, . . . courts routinely decide whether a dispute is arbitrable." *Id.* at 12. It argues that the same is true with respect to IDR eligibility. *Id.* Plaintiff further contends that it "is not seeking damages that it sought but failed to procure in the underlying IDR proceedings." *Id.* at 13. Instead, Plaintiff claims it "seeks damages related to costs for the overhead and resources necessary for [it] to respond to Federal and Texas IDR Processes and administrative fees and costs imposed on [it] as part of the Federal and Texas IDR Processes," neither of which it could recover in the IDR proceedings. *Id.* at 14. Therefore, according to Plaintiff, its claims are "necessarily not a collateral attack on [the IDR] proceedings." *Id.*

The Court agrees with Defendants that the NSA forecloses judicial review. The NSA expressly states that "[a] determination of a certified IDR entity under subparagraph (A) . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9 [(FAA § 10 (a)]." 42 U.S.C. § 300gg-111(c)(5)(E)(i). The determination under subparagraph (A) includes selecting "one of the offers submitted under subparagraph (B) to be the amount of payment **for such item or service determined under this subsection for purposes of subsection (a)(1) or (b)(1), as applicable**." *Id.* § 300gg-111(c)(5)(A) (emphasis added). Such a determination "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the" IDR entity. *Id.* at

300gg-111(c)(5)(E)(i). Thus, the NSA prevents this Court from reviewing the more than 42,000 IDR awards at issue in Plaintiff's suit. *See Guardian Flight, L.L.C v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025) ("The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA. . . . The district court correctly reasoned that this bar on judicial review strongly suggests Congress did not insert a private right of action into the statute.").

Plaintiff offers two reasons why it believes the NSA's bar on judicial review is inapplicable. First, Plaintiff contends that the bar only applies to "payment determination[s]," not eligibility decisions. Docket No. 21 at 9. Second, Plaintiff argues that its claims are not a collateral attack on the IDR awards and the relief they seek is outside the scope of the NSA's bar on judicial review. *Id.* Neither of these arguments is persuasive.

First, inherent in the NSA's bar of judicial review of payment determinations is a limitation on the review of eligibility decisions. If the Court were to conclude that the items and services submitted for payment by Defendants were ineligible under the NSA, then the ultimate payment awards would necessarily be called into question. *See Anthem Blue Cross Life and Health Ins. Co., et al. v. HaloMD, LLC, et al.*, No. 8:25-cv-01467-KES (C.D. Cal. Apr. 9, 2026), ECF No. 135 at 14 (concluding that "Plaintiffs' other fraud-based claims, like RICO, could not be litigated without deciding whether Defendants made false eligibility attestations, a decision that would necessarily re-examine eligibility determinations made by IDREs."). In addition, although Plaintiff argues that the only determination made by the IDR entity is "the amount of payment," its reading of the statute is too narrow because subparagraph (A) also makes clear that the amount of payment is "a determination for a qualified IDR item or service." 42 U.S.C. § 300gg111(c)(5)(A). This suggests

that Congress did not intend to impliedly provide an avenue for challenging eligibility decisions while expressly foreclosing judicial review of the IDR entities' payment determinations.

The cases on which Plaintiff relies to argue that there is no indication that Congress intended to foreclose judicial review of Defendants' eligibility scheme are inapposite. Each of the cases addresses the legal standard for determining whether Congress intended to prevent judicial review of administrative action, but they are not relevant because the dispute between the parties does not involve a federal agency's decision. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486–89 (2015) (judicial review of whether the Equal Employment Opportunity Commission complied with its duty to attempt conciliation of employment discrimination claims); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225–27 (2020) (judicial review of Board of Immigration Appeals' decisions on requests for equitable tolling of deadlines for filing statutory motions to reopen); *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993) (judicial review of Immigration and Naturalization Service determinations respecting illegal aliens' applications for adjustment of status under an alien legalization program). Yet, as Plaintiff points out, "Defendants' misrepresentations in the IDR Processes were not legitimate government petitioning activities. They were made in the course of **'private adjudications' overseen by private companies.**" Docket No. 21 at 35–36 (emphasis added). The cases on which Plaintiff relies are therefore inapplicable since Plaintiff is not challenging administrative actions.

Second, Plaintiff's claims are an impermissible collateral attack on the IDR awards. Plaintiff claims it is "not seeking damages that it sought but failed to procure in the underlying IDR proceedings." And yet, at the hearing on Defendants' motion, Plaintiff explained its requested damages as follows:

> We are not challenging the calculation of th[e] awards. We're saying th[e] awards were obtained through fraud. **So one of our remedies is seeking damages for th[e]**

Page **8** of **18**

> **fraudulently obtained awards.** But in addition, we're seeking damages for the administrative fees and also for the costs and expenses we went through in building out an entire team to respond to this ineligible scheme.

Docket No. 53 at 68:19–69:4 (emphasis added). Based on Plaintiff's own interpretation of its request for damages, it seeks payment that is largely co-extensive with the losses it allegedly sustained in the form of IDR awards decided against it.[3] The question then is whether Plaintiff's claims can still constitute a collateral attack on the IDR awards even if it seeks administrative fees, costs, and expenses in "building out an entire team to respond to th[e] ineligible scheme." *Id.* The Court concludes that they can.

The Fifth Circuit's opinion in *Gulf Petro Trading Company, Inc. v. Nigerian National Petroleum Corporation* is instructive. 512 F.3d 742 (5th Cir. 2008). The plaintiff brought suit in the Eastern District of Texas alleging that a final award in an arbitration held in Switzerland was procured by fraud, bribery, and corruption and seeking to vacate award. *Id.* at 745. The plaintiff argued that its "RICO and state law claims [were] not disguised attempts to vacate or attack" the final arbitration award because "the claims it advances and relief it seeks are analytically distinct from vacatur." *Id.* at 747, 750. Relying on Sixth Circuit cases involving collateral attacks on domestic arbitration awards,[4] the Fifth Circuit concluded:

---

[3] Indeed, each of Plaintiff's claims refers to the impact of Defendants' alleged actions on the ultimate IDR awards. *See, e.g.*, Docket No. 2 (Complaint) at ¶¶ 222, 242 (explaining regarding Plaintiff's fraud and negligent misrepresentation claims that "[b]ut for [HaloMD's] misrepresentations, HaloMD would not have been able to initiate Federal or Texas IDRs for ineligible claims[.]"); *see also id.* at ¶¶ 226, 243, 262, 287, 307, 322 (explaining regarding each of Plaintiff's claims that Defendants would have been unable to "obtain awards" for ineligible items and services absent Defendants' alleged conduct).

[4] In *Corey v. New York Stock Exchange*, the Sixth Circuit explained that a plaintiff's "claims constitute a collateral attack against the award even though [the plaintiff] is . . . requesting damages for the acts of wrongdoing rather than the vacation, modification or correction of the arbitration award." 691 F.2d 1205, 1213 (6th Cir. 1982). Similarly, in *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the Sixth Circuit affirmed a district court's order dismissing the case because the "ultimate objective in this damages suit is to rectify the alleged harm [the plaintiff] suffered by

> The relief Gulf Petro seeks—**the award it believes it should have received, as well as costs, expenses, and consequential damages stemming from the unfavorable award it did receive**—shows that its true objective in this suit is to rectify the harm it suffered in receiving the unfavorable Final Award. . . . Though cloaked in a variety of federal and state law claims, Gulf Petro's complaint amounts to no more than a collateral attack on the Final Award itself.

*Id.* at 750 (emphasis added). The Fifth Circuit ultimately decided that the case was properly dismissed for lack of subject matter jurisdiction. *Id.* at 753.

So too here. The alleged harm in this case did not result when Defendants submitted items and services for payment under the NSA or when the IDR entities determined that those items or services were eligible for IDR. Rather, the alleged harm resulted from the impact that such submissions and decisions had on the IDR entities' ultimate payment determinations.[5] Plaintiff makes this clear in its sur-reply to Defendants' motion in which it states that Defendants' alleged "scheme has allowed HaloMD to wrongly obtain awards its clients' were never entitled to in the first place, while also causing [Plaintiff] to incur substantial economic harms as a result of the fees, costs, and time that must be (wrongly) allocated to the IDR process for these ineligible submissions." Docket No. 39 at 2 (citing Docket No. 2 (Complaint) at ¶ 12). Plaintiff's attempts to distance its claims and damages from the IDR awards is therefore unpersuasive. Further, the

---

receiving a smaller arbitration award than she would have received in the absence of the chairperson's relationship with [the defendant]" and thus the plaintiff "did not follow the proper procedure for challenging her arbitration award under the FAA." 205 F.3d 906, 910–11 (6th Cir. 2000).

[5] The Court also notes that Plaintiff's interpretation of the statute would lead to untenable results. Assuming, *arguendo*, that Plaintiff were to prevail on its claims, the more than 42,000 IDR awards would remain intact. Thus, the predominant source of damages Plaintiff seeks would only serve to cancel out the amounts it would still owe the out-of-network healthcare providers pursuant to the awards. *Cf. Aetna Health Inc, et al. v. Radiology Partners, Inc., et al.*, No. 3:24-CV-1343 (M.D. Fla. Apr. 16, 2026) ("Allowing Aetna to recover for the IDR awards above what it otherwise would have paid would have the same effect as discarding the administrative process established by Congress."), ECF No. 105 at 9. This further demonstrates why the Plaintiff's claims are merely a collateral attack on the IDR awards.

collateral attack doctrine is even more clearly applicable where, as here, Plaintiff *is* attempting to relitigate issues previously decided by the IDR entities (*i.e.*, the eligibility of certain items and claims under the NSA).

Plaintiff's reliance on *Rein v. Providian Financial Corporation* is unpersuasive. Docket No. 39 at 3 (citing 270 F.3d 895, 902 (9th Cir. 2001)). There, the plaintiffs were debtors in separate Chapter 7 bankruptcy proceedings who owed a creditor various amounts in credit card debts. *Id.* at 897. One of the plaintiffs, Frenette, signed an agreement reaffirming the amount he owed the creditor, and the agreement was filed with the bankruptcy court. *Id.* at 898. The plaintiffs later filed suit against the creditor, alleging violations of the automatic stay and discharge provisions of the Bankruptcy Code. *Id.* The district court dismissed the case because, in part, the collateral attack doctrine prevented Frenette from attacking the approval of the reaffirmation agreement in a separate judicial proceeding. *Id.* However, the Ninth Circuit reversed as to Frenette because his "claims were never addressed by a prior order or judgment" and "no adverse proceeding ever was instituted against him." *Id.* at 902.

This case is distinguishable. Plaintiff does not dispute that HaloMD initiated IDR proceedings to resolve payment disputes for certain items and services, nor that the disputes were decided adversely to Plaintiff. In addition, a key issue running through all of Plaintiff's independent causes of action—the eligibility of certain items or services for IDR under the NSA—was decided by the IDR entities, and Plaintiff does not dispute that it had an opportunity to challenge eligibility throughout those proceedings.

Plaintiff also argues that it is "attacking Defendants' [allegedly] fraudulent scheme as a whole," which extends beyond any individual proceeding and is ongoing. Docket No. 39 at 3. However, Plaintiff has not cited any authority suggesting a complaint attacking many IDR or

arbitration awards simultaneously would be immune from the collateral attack doctrine.[6] Further, the Fifth Circuit rejected a similar argument regarding a "scheme" in *Gulf Petro*. 512 F.3d at 747 (rejecting the plaintiff's contention that "it has alleged a pattern of racketeering and conspiratorial conduct that, while arising in the context of arbitration proceedings, constitutes an independent violation of federal and state law and compels relief analytically distinct from vacatur.").

Plaintiff further contends that "IDR proceedings are not true arbitrations, so the collateral attack doctrine should not apply at all in this context." Docket No. 39 at 3. Plaintiff does not provide any authority for this argument. Rather, Plaintiff points to a series of characteristics that it believes distinguish IDR proceedings from arbitration, including that "arbitration is voluntary, pursuant to mutual agreement, and permits parties to define the scope of the proceedings." *Id.* at 6. None of these differences, however, changes the fact that Congress expressly prohibited judicial review of IDR awards and did not provide a private right of action to enforce or challenge such awards. In addition, Plaintiff exaggerates the distinction between IDR proceedings and arbitration. The Fifth Circuit has explained:

> Like judges and arbitrators, [Certified Independent Dispute Resolution Entities] are neutral arbiters of payment disputes with no stake in the underlying controversy.

---

[6] Plaintiff's complaint contains numerous discussions of the alleged inefficiency and perceived unfairness of the IDR process. *See, e.g.*, Docket No. 2 (Complaint) at ¶ 3 (explaining that "[t]hese IDR Processes have not worked as intended."); *id.* at ¶ 67 (explaining that "it was estimated that there would be approximately 17,435 disputes submitted to the Federal IDR Process each year," but that "[t]hose estimates turned out to be a drastic underestimate."); *id.* at ¶ 69 (explaining that "providers [are] winning a disproportionate amount of these disputes" and the providers are receiving "unreasonably high rates"); *id.* at ¶ 72 (explaining that "[r]esearchers have commented that 'absent corrective action from policymakers, patients will ultimately bear the cost through higher premiums and the administrative overhead of an increasingly exploited arbitration process.' " (quoting Lawson Mansell & Sage Mehta, Niskanen Center, *New data shows No Surprises Act arbitration is growing healthcare waste*, (June 18, 2025), Available at: https://www.niskanencenter.org/new-data-shows-no-surprises-act-arbitration-is-growing-healthcare-waste/)). However, these complaints are not proper issues for the Court to resolve, and they further demonstrate why Plaintiff's complaints are more appropriately addressed to policymakers in Congress and the Texas legislature.

> They receive competing offers for payment, consider information supporting the offers, and then choose one of the offers, which is binding on the providers and insurers. 42 U.S.C. § 300gg-112(b)(4), (b)(5). CIDREs, in sum, function more or less exactly like arbitrators.

*Guardian Flight, LLC v. Med. Evaluators of Tex. ASO, LLC*, 140 F.4th 613, 623 (5th Cir. 2025).

Thus, the Court is unpersuaded that the collateral attack doctrine applies with any less force to attacks on IDR awards based on the differences Plaintiff has identified.

Plaintiff finally argues that it seeks prospective relief and that it "cannot possibly 'collaterally attack' IDRs that have not yet been commenced." Docket No. 21 at 14; *see also* Docket No. 39 at 5 ("BCBSTX also seeks relief that is entirely different than that available through the IDR Processes, including an injunction prohibiting future misconduct."). While this may be true, Plaintiff's request for an injunction is a remedy rather than an independent cause of action. *See Doe v. Univ. of N. Tex.*, No. 4:18-CV-17, 2018 WL 6495084, at *9 n.10 (E.D. Tex. Nov. 20, 2018), *report and recommendation adopted sub nom. Jon Unt-Rs Doe v. Univ. of N. Tex.*, No. 4:18-CV-17, 2018 WL 6446469 (E.D. Tex. Dec. 10, 2018) (collecting cases and explaining that "Federal courts recognize an injunction is a remedy, not a separate claim or cause of action; a pleading can request injunctive relief in connection with a substantive claim, but a separately plead claim or cause of action for injunctive relief is inappropriate."). This is confirmed by Plaintiff's complaint, which states that Plaintiff "seeks an injunction prohibiting Defendants from continuing to submit false attestations and initiate Federal and State IDR Processes for claims, items, or services that are not eligible for IDR, or from seeking to enforce non-binding awards entered on items and services not eligible for IDR." Docket No. 2 (Complaint) at ¶ 341. Plaintiff's request for an injunction therefore does not constitute an independent cause of action and is inextricably intertwined with its other claims.

Based on the foregoing, Plaintiff's Claims I–VII with respect to Defendants' submission of items and services for Federal IDR are **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

**B.      The Texas Insurance Code's Limit on the Judicial Review of IDR Awards and Collateral Attack**

The Court's analysis concerning the NSA and the federal IDR process, *supra* Section I.A.2, also applies to Plaintiff's causes of action related to the Texas IDR process. However, the parties' specific arguments related to the Texas IDR awards are addressed below.

**1.      The Texas IDR Process**

Prior to the adoption of the NSA, the Texas legislature passed Senate Bill 1264 in 2019 to establish an "Out–of–Network Claim Dispute Resolution" process. Docket No. 2 (Complaint) at ¶¶ 51, 53 (citing, for example, Tex. Ins. Code §§ 1467.050 and 1467.081). The statute directs the Texas Commissioner of Insurance to "adopt rules, forms, and procedures necessary for the implementation and administration of the arbitration program." Tex. Ins. Code § 1467.082. The parties to a Texas IDR may agree on an arbitrator; otherwise the Commissioner will select one to preside over the dispute. *Id.* at § 1467.086(a).

The statute provides that "[t]he only issue that an arbitrator may determine under this subchapter is the reasonable amount for the health care or medical services or supplies provided to the enrollee by an out-of-network provider." *Id.* at § 1467.083. The Texas Department of Insurance, rather than the arbitrator, is responsible for determining the eligibility of items and services for IDR. Docket No. 21 at 16 n.8 ("Instead, it is the TDI, not the TDI neutral, who determines eligibility." (citing Tex. Ins. Code § 1467.081)). An arbitrator's determination of the reasonable amount for the health care or medical services or supplies is binding. Tex. Ins. Code § 1467.089(a). "Not later than the 45th day after the date of an arbitrator's decision . . . a party not

satisfied with the decision may file an action to determine the payment due to an out-of-network provider." *Id.* at § 1467.089(b).

Unlike the NSA, Senate Bill 1264 does not limit judicial review of an arbitrator's decision to the mechanisms provided in the Federal Arbitration Act. Instead, the statute limits the reviewing court's determination to "whether the arbitrator's decision is proper based on a substantial evidence standard of review." *Id.* at § 1467.089(a).

### 2.    Analysis

Defendants argue that, similar to federal IDR awards, Texas IDR awards are binding arbitrator decisions and judicial review is strictly limited. Docket No. 15 at 18. Specifically, Defendants note that a dissatisfied party has 45 days from the date of the arbitrator's decision to file a suit for judicial review and that " 'determining the amount that an out-of-network provider should be paid by an insurer is a technical exercise to be performed by a subject-matter expert— not an issue to be decided by a jury of laymen.' " *Id.* (quoting *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 436 (Tex. 2023)). In addition, Defendants contend that "[r]egardless of who decides eligibility, that decision necessarily precedes and leads to the Texas IDR arbitrator's payment decision." Docket No. 28 at 9. According to Defendants, allowing Plaintiff "to seek effective vacatur" of the Texas IDR awards based on eligibility or other grounds would "eviscerate" the statute's limitations on judicial review. *Id.* at 9–10.

Plaintiff argues that "[n]o part of the arbitrator's decision under Section 1467.088 relates to eligibility," Docket No. 21 at 16. Further, Plaintiff contends that, under Defendants' interpretation, "the statute's text restraining the time bar to a[n arbitrator's] 'decision under Section 1467.088' would be rendered superfluous." *Id*. In any event, Plaintiff argues it is "not challenging whether the awarded amount, in any IDR, was 'the closest to the reasonable amount for the services or supplies.' " Docket No. 39 at 7.

The Court agrees with Defendants. The Texas Insurance Code gives a dissatisfied party 45 days to file a suit challenging an arbitrator's determination. Tex. Ins. Code § 1467.089(b). Even if the dissatisfied party files such a case as allowed under Section 1467.089(b), the reviewing court's determination is limited to "whether the arbitrator's decision is proper based on a substantial evidence standard of review." *Id.* at § 1467.089(a). The decision referred to in Section 1467.089(b) is the arbitrator's determination of "the reasonable amount for the health care or medical services or supplies provided to the enrollee by an out-of-network provider." *Id.* at § 1467.083.

As with Plaintiff's claims related to the federal IDR awards, Plaintiff's claims related to Defendants' alleged conduct in the Texas IDR process constitute collateral attacks on the Texas IDR awards. While the Texas Insurance Code does not limit judicial review in the same manner as the NSA, it (1) limits the scope of what the reviewing court may consider (*i.e.*, the arbitrator's decision), and (2) prescribes the standard of review that the court must apply. *Id.* at § 1467.089(c). If the Court were to conclude that the items and services submitted for payment by Defendants were ineligible, then the arbitrators' decisions about the reasonable amounts owed would necessarily be called into question. As explained with regard to the federal IDR process, *supra* Section I.A.2, the Court is unpersuaded that the collateral attack doctrine does not apply simply because Plaintiff's claims indirectly challenge thousands of awards rather than one particular award.

Plaintiff's argument that Defendant's interpretation of the Texas Insurance Code would render the 45-day limit superfluous is unpersuasive. The Texas legislature explicitly provided a limited private right of action for a dissatisfied party to challenge the arbitrator's determination of the reasonable amount for the items and services at issue. It further gave the dissatisfied party 45 days to exercise that right. The logical inference from the Texas legislature's limitation on judicial

review of the Texas IDR awards is that it did not intend to provide a mechanism for a dissatisfied party to challenge the award on other grounds, including eligibility. Indeed, it is Plaintiff's interpretation that would render the Texas legislature's limits on judicial review superfluous because it would allow a dissatisfied party to challenge a Texas IDR award for any reason and without a time constraint so long as the dissatisfied party did not challenge the reasonableness of the award. Plaintiff offers no evidence that this was the Texas legislature's intent.

Based on the foregoing, Plaintiff's Claims I–VII with respect to Defendants' submission of items and services for Texas IDR are **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

### C.       Defendants' Remaining Arguments

Because the Court concludes that it lacks subject matter jurisdiction pursuant to the NSA, SB 1264, and the collateral attack doctrine, it does not reach the merits of Defendants' arguments regarding Article III standing, the *Noerr-Pennington* Doctrine, and Rules 9(b) and 12(b)(6).

## II.       Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Rules 12(b)(1) and 12(b)(6) Motions to Dismiss (Docket No. 31)

Defendants request that the Court stay discovery pending the resolution of their motion to dismiss. Docket No. 31 at 1. However, because the instant Order disposes of the motion to dismiss (Docket No. 15), Defendants' request is no longer applicable. Thus, the motion to stay (Docket No. 31) is **DENIED-AS-MOOT**.

### CONCLUSION

For the foregoing reasons, Defendants HaloMD, LLC, Alla LaRoque, and Scott LaRoque's Joint Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) and Related Request for Judicial Notice of Public Documents (Docket No. 15) is **GRANTED**, and Defendants' Motion to Stay

Discovery Pending Resolution of Defendants' Rules 12(b)(1) and 12(b)(6) Motions to Dismiss (Docket No. 31) is **DENIED-AS-MOOT**.

    **So ORDERED and SIGNED this 22nd day of May, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE